**HUTCHINSON TECHNOLOGY, INC.,**
Respondent (A04–1245), Relator
(A04–1247)

v.

**COMMISSIONER OF REVENUE,**
Relator (A04–1245), Respondent
(A04–1247).

Nos. A04–1245, A04–1247.

Supreme Court of Minnesota.

June 9, 2005.

Mike Hatch, Attorney General, Bradford S. Delapena, Assistant Attorney General, James W. Neher, Assistant Attorney General, St. Paul, MN, for Appellant.

Walter A. Pickhardt, Lisa R. Pugh, Faegre & Benson, L.L.P., Minneapolis, MN, for Respondent.

OPINION

ANDERSON, RUSSELL A., Justice.

This case involves claims for refund of Minnesota corporate franchise taxes paid by Hutchinson Technology, Inc. (HTI) for tax years 1995 through 1999, based on its relationship and transactions with its wholly-owned foreign subsidiary, HTI Export, Ltd. (Export). The refund claims are based on HTI's assertion of eligibility for (1) a subtraction in calculating its net income of "royalties, fees, or other like income" accrued or received by HTI from Export, Minn.Stat. § 290.01, subd. 19d(11) (1998)[1] (the "fees subtraction"); and (2) a deduction from HTI's taxable net income for 80 percent of dividends deemed paid to HTI by Export, Minn.Stat. § 290.21, subd. 4(a)(1) (2004) (the "dividend-received deduction"). Both tax treatments involve issues relating to Export's status as a "foreign sales corporation" (FSC) under federal tax law and a "foreign operating corporation" (FOC) under Minnesota tax law. The Commissioner of Revenue denied both the subtraction and the deduction for all of the tax years in issue. In a series of three decisions, the Minnesota Tax Court ruled that Export could qualify as both a FSC and an FOC and allowed HTI the fees subtraction. But the court denied HTI the dividend-received deduction and concluded that this denial did not violate the Foreign Commerce Clause of the United States Constitution. We affirm in part and reverse in part.

Minnesota taxes corporate income using a combined reporting method. This

[1]. Subdivision 19d(11) was amended in 1997, with changes not material to the resolution of this case. *Compare* Minn.Stat. § 290.01, subd. 19d(11) (1996). *See also* Minn.Stat. § 290.01, subd. 19d(10) (2004) (renumbering former subdivision 19d(11) with no change in wording from 1998).

means that the income of separate corporations that are engaged in a unitary business is combined for purposes of determining the Minnesota franchise tax. *See Caterpillar, Inc. v. Comm'r of Revenue,* 568 N.W.2d 695, 696 (Minn.1997). Minnesota uses the "waters edge" model of combined reporting, which includes only domestic members of the unitary group in the combined income reporting and excludes foreign members of a unitary business from the combination. *See id.* at 696 n. 2.[2] The tax treatments at issue in this case involve two exceptions to the waters edge system of combined tax reporting.

First, Minnesota defined the foreign-incorporated FSCs as domestic subsidiaries and included this one type of foreign-incorporated corporation in the unitary group so that its income would be taxed with its parent's income. Minn.Stat. § 290.01, subd. 5 (2004); Minn.Stat. § 290.01, subd. 19c(9) (1998).[3] A FSC, created under federal tax law, allowed U.S. exporters to reduce their federal income tax on export-related income if they followed certain requirements under the federal tax code. I.R.C. § 922(a) (1994).[4] FSCs had to be incorporated and have certain minimal activities occurring in a foreign country or a United States possession, but they were not required to have any actual operations. *See id.*

Second, Minnesota chose to exclude the income of one type of domestic corporation from the unitary group—the FOC. Minn. Stat. § 290.17, subd. 4(h) (2004). FOCs are a Minnesota tax entity adopted in 1988 to provide some tax relief for domestic corporations that manufactured goods for export. The income from the FOCs was instead deemed paid to the parent corporation as a dividend. Minn.Stat. § 290.17,

---

**2.** Because members of a unitary business group may operate in more than one jurisdiction, and because "a [s]tate may not tax value earned outside its borders," *ASARCO, Inc. v. Idaho State Tax Comm'n,* 458 U.S. 307, 315, 102 S.Ct. 3103, 73 L.Ed.2d 787 (1982), an apportionment formula is applied to the combined income to identify income properly allocated to, and therefore taxable by, Minnesota. *See Caterpillar,* 568 N.W.2d at 696.

**3.** Minnesota Statutes § 290.01, subd. 19c(9) (1998), appears as section 290.01, subd. 19c(10), in the statutes of 1994 and 1996. The provision is now codified at Minn.Stat. § 290.01, subd. 19c(8) (2004).

**4.** The term "FSC" means any corporation—
(1) which—
 (A) was created or organized—
 (i) under the laws of any foreign country which meets the requirements of section 927(e)(3), or
 (ii) under the laws applicable to any possession of the United States,
 (B) has no more than 25 shareholders at any time during the taxable year,
 (C) does not have any preferred stock outstanding at any time during the taxable year,
 (D) during the taxable year—
 (i) maintains an office located outside the United States in a foreign country which meets the requirements of section 927(e)(3) or in any possession of the United States,
 (ii) maintains a set of the permanent books of account (including invoices) of such corporation at such office, and
 (iii) maintains at a location within the United States the records which such corporation is required to keep under section 6001,
 (E) at all times during the taxable year, has a board of directors which includes at least one individual who is not a resident of the United States, and
 (F) is not a member, at any time during the taxable year, of any controlled group of corporations of which a DISC is a member, and
(2) which has made an election (at the time and in the manner provided in section 927(f)(1)) which is in effect for the taxable year to be treated as a FSC.
I.R.C. § 922(a).

subd. 4(g) (1998). But Minnesota then allowed parent corporations of FOCs to take some income deductions or subtractions for portions of the FOCs' foreign income and for certain expenses. These deductions and subtractions are involved in the case before us.

HTI is a Minnesota corporation that manufactures and sells components for computer hard drives. HTI ran its export sales through Export, as its nonexclusive distributor, in order to maximize federal tax benefits. For the fiscal years beginning September 24, 1994, and ending September 26, 1999 (the tax years in issue), the parties have stipulated that Export was a wholly-owned subsidiary of HTI and was a FSC [5] under the Internal Revenue Code.

On its Minnesota corporate franchise tax returns for the tax years in issue, HTI claimed a dividend-received deduction under Minn.Stat. § 290.21, subd. 4(a)(1), on the basis that it could deduct 80 percent of the dividends that Export, as an FOC, was deemed to have paid to HTI under Minn. Stat. § 290.17, subd. 4(g).[6] In 2001, the Commissioner denied HTI this deduction for all of the tax years in issue, stating that Export was not an FOC, and assessed HTI additional taxes, with interest and penalties.

HTI appealed to the tax court. HTI contended that Export was an FOC under Minn.Stat. § 290.01, subd. 6b (1998), because (1) Export was a FSC, and therefore a domestic corporation as defined in Minn. Stat. § 290.01, subd. 5 (2004); (2) Export was engaged in a unitary business with HTI, a corporation that was taxable in Minnesota; and (3) the average of Export's property and payrolls assigned to locations inside the United States was 20 percent or less than its total property and payroll. HTI contended that it was therefore entitled to the dividend-received deduction as an FOC.

On the preliminary issue of Export's qualification as an FOC, the tax court granted partial summary judgment to HTI, determining that Export qualified as an FOC under the plain meaning of Minn. Stat. § 290.01, subd. 6b. *Hutchinson Tech. Inc. v. Comm'r of Revenue*, No. 7398–R, 2003 WL 223405, at *5 (Minn. T.C. Jan. 2, 2003). But even though it determined that Export qualified as an FOC, the court, in a subsequent decision, denied HTI the dividend-received deduction and granted partial summary judgment to the Commissioner because Export was also a FSC. *Hutchinson Tech., Inc. v. Comm'r of Revenue*, Nos. 7398–R, 7504–R (Minn. T.C. Sept. 15, 2003), *available at* http://www. taxcourt.state.mn.us/published%20orders/2003/ hutchinson%20technology%20v%20cor%2009–15–03%20.doc. The tax court explained that HTI's eligibility for the dividend-received deduction was controlled by the plain language of Minn. Stat. § 290.21, subd. 4(e) (1998), which "clearly states that the dividend-received deduction 'does not apply if the dividends

---

**5.** FSCs were recognized under federal law from 1985 until 2000, when Congress repealed the FSC provisions, replacing them with an exclusion for extraterritorial income. *See* FSC Repeal and Extraterritorial Income Exclusion Act of 2000, §§ 2–3, Pub.L. No. 106–519 (2000). As a result of the change in federal tax law, Export was dissolved in 2001.

**6.** Minnesota Statutes § 290.17, subd. 4(g), states in relevant part:

The adjusted net income of a foreign operating corporation shall be deemed to be paid as a dividend on the last day of its taxable year to each shareholder thereof, in proportion to each shareholder's ownership, with which such corporation is engaged in a unitary business. Such deemed dividend shall be treated as a dividend under section 290.21, subdivision 4.

are paid by an FSC.'" Dividends paid by FSCs, like Export, were therefore expressly excluded from the deduction. The tax court also held that the denial of the dividend-received deduction for FSC dividends did not violate the Foreign Commerce Clause of the United States Constitution because the discrimination was not based on the FSC's place of incorporation, but rather on the FSC's unique nature as "a special type of corporation created and existing solely under the federal tax code."

In 2002, HTI filed amended tax returns claiming the subtraction under Minn.Stat. § 290.01, subd. 19d(11), for 80 percent of "royalties, fees, or other like income" received by HTI from Export. The Commissioner denied the refund because "some or all of the expenses claimed in the amended returns [did] not qualify as foreign royalties or fees." The Commissioner further stated that "[i]tems such as interest, rents, depreciation, etc. do not constitute 'fees.'" HTI appealed to the tax court, which determined that pursuant to Minn.Stat. § 290.01, subd. 19d(11), HTI was entitled to subtract 80 percent of the fees that it had accrued or received from Export. *Hutchinson Tech., Inc. v. Comm'r of Revenue,* Nos. 7398–R, 7504–R, 2004 WL 1161427 (Minn. T.C. May 10, 2004), *available at* http://www. taxcourt.state.mn.us/published%20orders/2004/hutchinson%20v%20cor%2005–10–04.doc.

■ HTI and the Commissioner each petitioned our court for certiorari review, and we consolidated the two cases. We review (1) the Commissioner's appeal of the tax court's ruling that Export was an FOC; (2) the Commissioner's appeal of the tax court's decision allowing HTI to take the fees subtraction; and (3) HTI's appeal

of the tax court's decision affirming the denial of the dividend-received deduction and HTI's contention that this denial violates the Foreign Commerce Clause. Our review of tax court decisions is limited. We uphold the tax court's ruling "where sufficient evidence exists for the tax court to reasonably reach the conclusion it did." *Green Giant Co. v. Comm'r of Revenue,* 534 N.W.2d 710, 711 (Minn.1995) (quoting *Am. Ass'n of Cereal Chemists v. County of Dakota,* 454 N.W.2d 912, 914 (Minn.1990)). We review de novo the tax court's conclusions of law, including its interpretation of statutes. *Chapman v. Comm'r of Revenue,* 651 N.W.2d 825, 830 (Minn.2002).

I.

■ We first examine the tax court's determination of the preliminary issue of whether Export qualified as a "foreign operating corporation" under Minn.Stat. § 290.01, subd. 6b. The Commissioner contends that the statute was ambiguous and should be construed to reflect legislative intent that FSCs could not qualify as FOCs.[7]

For the tax years in issue, Minn.Stat. § 290.01, subd. 6b, provided:

The term "foreign operating corporation," when applied to a corporation, means a domestic corporation with the following characteristics:

(1) it is part of a unitary business at least one member of which is taxable in this state; and

(2) either (i) the average of the percentages of its property and payrolls assigned to locations inside the United States and the District of Columbia, excluding the common-

---

7. Minnesota Statutes § 290.01, subd. 6b (2004) (effective 2002), expressly excludes FSCs from also being FOCs. This statute now requires that an FOC not be "a foreign sales

corporation under section 922 of the Internal Revenue Code." Minn.Stat. § 290.01, subd. 6b (2004).

wealth of Puerto Rico and possessions of the United States, as determined under Section 290.191 or 290.20, is 20 percent or less; or (ii) it has in effect a valid election under section 936 of the Internal Revenue Code.

There is no dispute that Export satisfied the first characteristic because the parties stipulated that Export was a unitary business with HTI, a corporation taxable in Minnesota. It is also incontrovertible that Export met the requirement to have 20 percent or less of its property and payroll assigned to locations inside the United States because the parties stipulated that Export had no property or payroll inside the United States.[8] The tax court concluded that Export met the basic criterion, that Export was a domestic corporation, because the definition of domestic corporation in Minn.Stat. ch. 290 included a corporation "which qualifies as a FSC, as defined in section 922 of the Internal Revenue Code." Minn.Stat. § 290.01, subd. 5(3).

The Commissioner argues that as a FSC, Export did not qualify as an FOC because it was not a domestic corporation as that term was intended in section 290.01, subdivision 6b, which defined FOCs. In other words, according to the Commissioner the definition of "domestic corporation" in subdivision 5(3) of section 290.01, which expressly includes FSCs, did not apply when that term was used in subdivision 6b of section 290.01. Instead, the Commissioner argues, in subdivision 6b, "domestic corporation" had a more narrow meaning, and included only domestically-incorporated corporations; FSCs, which are foreign-incorporated corporations, were therefore not included. Specif-

ically, the Commissioner asserts that the legislature only defined FSCs as domestic corporations in order to designate their income as part of the unitary combination and would not have intended to undo that designation by including FSCs as FOCs, whose income is excluded from the unitary combination. Minn.Stat. § 290.17, subd. 4(f) (2004). Further, the Commissioner argues that the purpose of the FOC legislation was to encourage corporations to use *domestic* affiliates for their foreign operations, a purpose that would be undercut by granting foreign-affiliate FSCs the same favorable tax treatment.

The Commissioner relies on legislative history to support these arguments and argues that the court should consider that history because the statutory language to be interpreted is ambiguous. The Commissioner contends that, during the tax years in issue, Minn.Stat. § 290.01, subd. 6b, was ambiguous because treating a *foreign* sales corporation as a *domestic* corporation under subdivision 5 and then as a *foreign* operating corporation under subdivision 6b is contradictory—and therefore ambiguous.

The Commissioner's argument attempts to circumvent the direct and plain language of the statutes at issue. Subdivision 5 of section 290.01 defines domestic corporations and expressly includes FSCs in that definition. Minnesota Statutes § 290.01, subd. 5a (2004), defines "foreign corporation," but only as "a corporation other than a domestic corporation." In defining foreign corporation by negative reference to domestic corporations, the legislature essentially incorporated the definition of domestic corporation into subdivision 5a. Subdivisions 5 and 5a define the universe of domestic and foreign cor-

8. The parties agree that Export did not have a valid election under section 936 of the Internal Revenue Code, but this is of no conse- quence because Export satisfied the first alternative of this requirement.

porations, and FSCs fall squarely within the definition of domestic corporations. Section 290.01, subd. 6b, defines FOCs and specifies that they are domestic corporations. There is no qualification in the language suggesting the term has a different meaning in subdivision 6b than it has in subdivision 5 or as incorporated into subdivision 5a.

Moreover, Minn.Stat. § 290.01, subd. 1 (2004), provides: "Unless the language or context clearly indicates that a different meaning is intended, the following words, terms, and phrases, for the purposes of this chapter, shall be given the meanings subjoined to them." Thus, the legislature stated that these very definitions are intended to apply throughout chapter 290, absent a clear indication otherwise. There is no such indication in subdivision 6b that the subdivision 5 definition of domestic corporation should not apply.

 We have repeatedly held that we must give effect to the plain meaning of statutory text when it is clear and unambiguous. *E.g., Green Giant,* 534 N.W.2d at 712. A statute is ambiguous if it is reasonably susceptible to more than one interpretation. *Harris v. County of Hennepin,* 679 N.W.2d 728, 731 (Minn.2004). When a statute is clearly worded, we generally do not consider legislative history. *State v. McKown,* 475 N.W.2d 63, 66 (Minn.1991); *see also* Minn.Stat. § 645.16 (2004).

We can discern no ambiguity where the legislature expressly defined domestic corporations to include FSCs and only four subdivisions later in the same law used the term domestic corporation, without qualification, in its definition of FOCs. We therefore find no cause to look beyond the plain language of the statutes to legislative history that might create, rather than eliminate, ambiguity.

The Commissioner also argues that if we hold that the plain language controls, we must also give effect to the word "operating" in the term "foreign operating corporation," by requiring that a corporation have genuine operations to qualify as an FOC. The Commissioner contends that because FSCs have no genuine operations, they therefore could not qualify as FOCs, even if they were considered domestic corporations. This argument invites us to transform part of the label chosen by the legislature for this type of tax entity into a functional characteristic or requirement. But the very structure of the definitional language itself illustrates the contrary. In subdivision 6b, the legislature used "foreign operating corporation" in quotation marks merely as the "term" being defined, and when it delineated the required "characteristics," made no mention of "operations." [9] We conclude that the language of subdivision 6b does not require operations in the sense argued by the Commissioner, and we will not add requirements to the statute beyond those specified by the legislature. *Green Giant,* 534 N.W.2d at 712 ("We will not supply that which the legislature purposefully omits or inadvertently overlooks.").

The parties stipulated to all the facts underlying our legal conclusions. We hold that the tax court did not err in concluding that Export qualified as an FOC under Minn.Stat. § 290.01, subd. 6b, for the tax years in issue.

## II.

 The next issue is whether the tax court erred in ruling that under Minn.Stat. § 290.01, subd. 19d(11), HTI could subtract from its taxable income 80 percent of

---

9. See Minn.Stat. § 290.01, subd. 6b, quoted *supra.*

the fees paid to it by Export for the tax years in issue. Essentially, the parties dispute what constitutes a "fee" eligible for subtraction under the statute.

The starting point for calculation of a corporation's Minnesota franchise tax is its "federal taxable income." Minn.Stat. § 290.01, subd. 19 (1998). Adjustments are made to that amount by specified additions and subtractions. *See* Minn.Stat. § 290.01, subds. 19c (additions) and 19d (subtractions) (1998). The subtraction at issue here, for the tax years in issue, allowed a Minnesota corporation to subtract from its federal taxable income 80 percent of "royalties, fees, or other like income accrued or received from a foreign operating corporation or a foreign corporation which is part of the same unitary business as the receiving corporation." Minn.Stat. § 290.01, subd. 19d(11).

■ The statute does not define "fees," but Minnesota Revenue Notice 93–24 (Nov. 22, 1993) interpreting section 290.01, subd. 19d(11), states that fees are "payments for services performed or to be performed." The parties agree with that definition of fees, and it comports with the common meaning of the term. *See Black's Law Dictionary* 647 (8th ed. 2004) (defining "fee" as "a charge for labor or services, esp. professional services"). Accordingly, we construe the term fees in subdivision 19d(11) to mean payments for services performed or to be performed. *See* Minn. Stat. § 645.08, subd. 1 (2004) (When a word is not defined in a statute, a court must construe it "according to [its] common and approved usage."). Despite their agreement on the definition of fees in the abstract, the parties disagree whether qualifying fees were paid by Export to HTI. Essentially, the Commissioner contends that any fees paid by Export do not qualify for the fees subtraction because they were merely paper transactions, in-

tended only to qualify HTI for federal tax benefits, with no genuine business purpose. The Commissioner also asserts that it is improper to include indirect costs incurred by the parent in the fee calculation because they are not fees for services.

The tax court found that the transactions between HTI and Export were governed by two serial intercompany agreements. Under the agreements Export agreed to serve as HTI's nonexclusive agent to sell and distribute HTI-manufactured parts outside the United States. For its sales, Export would receive commissions from HTI, determined in accordance with the Internal Revenue Code and Treasury Regulations. *See* I.R.C. §§ 925, 927 (1994); Treas. Reg. § 1.925(a)–1T (1994) (temporary regulation). Particularly relevant to the issue of fees, the intercompany agreements also provided that HTI would perform sales-related services for Export for which Export would compensate HTI as required by the Code and Treasury Regulations. The agreements provided that the fees due for HTI's services would be credited against the sales commissions due to Export through book entry transactions. The tax court found that under these agreements,

> [d]uring the years in issue, Export paid HTI for services that included contacting the customer and generating the customer's interest in the property, determining the customer's creditworthiness, arranging to take orders, as well as transport and delivery of the property, and ensuring that cash was collected or wire transfers made from the customers to HTI.

Based on testimony of witnesses presented at trial by HTI, the tax court also found that the amount of the fees paid for services was calculated as required by federal Treasury Regulations to determine an "arm's-length" charge for the costs of pro-

viding services, which included both direct and indirect costs.[10] Based on the testimony of HTI's accounting expert, the tax court found that the offsetting bookkeeping entries that credited the fees against the commissions constituted a payment of fees in accordance with generally accepted accounting principles (GAAP).

The Commissioner argues that the tax court's analysis should be rejected because it is founded on a faulty premise—that Minnesota has adopted federal tax law regarding FSCs, including federal law governing fees paid by a FSC to its parent. The Commissioner contends that on the contrary, by choosing to include income of a FSC in the unitary combination, Minnesota actually rejected the federal treatment of FSCs, which, as foreign affiliates, would not have their income included in the combination. Accordingly, the Commissioner argues, just because the transactions between HTI and Export were treated as fees for services under federal law, that does not qualify them as fees under state law. The Commissioner asserts, in particular, that the allocation of indirect costs as fees for services is improper because it merely reflects a shifting of costs from the parent to the subsidiary.[11]

The Commissioner contends that this issue is controlled by *Bunge Corp. v. Commissioner of Revenue*, 305 N.W.2d 779 (Minn.1981). In *Bunge*, we rejected eligibility for a tax deduction of sales commissions paid to a DISC, a federally-recognized tax entity that preceded and was very similar to a FSC. *See id.* at 783. Although the commission payments at issue were authorized by federal tax law governing DISCs, we held that they could

not be used as a deduction for ordinary and necessary business expenses because they served no purpose other than to qualify for federal tax benefits. *Id.* at 783–84. The court noted that there had been no change in the manner of doing business related to the payments; the parent company's employees were doing the same work they had done before the relationship with the DISC was created. *Id.* at 783. The Commissioner emphasizes that the same circumstances pertain here, and the fees here similarly should not qualify for favorable state tax treatment just because they qualified for favorable federal tax treatment.

■ We agree with the result reached by the tax court on this issue, albeit not with all of its analysis. We agree with the Commissioner that the tax court erred in its conclusion that because Minnesota has adopted federal tax law regarding FSCs, federal law governs which fees are subject to the fees subtraction, but we do not agree that the tax court's entire analysis of this issue is flawed based on that conclusion. In addressing the plain language of the statute, the tax court appeared to decide that because Minnesota has adopted federal taxable income as the starting point in determining Minnesota taxable income:

[t]he provisions of the Code and Regulations used to calculate that income have been unambiguously adopted by the Minnesota Legislature and the Department of Revenue. The fees at issue were calculated and paid under the provisions of federal tax law that have been incorporated by reference into Minnesota tax law.

**10.** Direct costs would be something like the salary of an HTI employee engaged in sales for Export, whereas indirect costs would be expenditures to support that employee's work, such as management salaries or rent.

**11.** The Commissioner notes, for example, that in 1997, HTI charged over $43 million in fees, but only $10,306 were for direct costs.

While it is true that Minnesota has incorporated federal taxable income as the starting point for calculating Minnesota taxable income, that does not mean that *all* related provisions of federal tax law have been incorporated into state law.[12] Similarly, we cannot conclude that *any* reference to federal law governing FSCs necessarily imports into state law every provision of federal law relating to FSCs. Where the legislature intended to incorporate federal tax law, it has done so explicitly, such as the provision for adding the exempt foreign trade income of a foreign sales corporation "under sections 921(a) and 291 of the Internal Revenue Code" to federal taxable income. Minn.Stat. § 290.01, subdivision 19c(9) (1998).[13] In contrast, the provision for subtraction of fees makes no reference to FSCs or to the Internal Revenue Code.

For the same reason, the tax court's and HTI's reliance on *Green Giant* is misplaced. In *Green Giant,* we rejected the Commissioner's argument that a federally-created offset from corporate gross income should not be allowed in computing state taxes because it would be contrary to legislative intent. 534 N.W.2d at 712. But in that case the state legislation defining gross income expressly adopted the particular section of federal tax law that was in question. *Id.* at 711. The absence of a similar express reference to federal law in the provision allowing subtraction of fees makes the determination of what constitutes fees here an issue of state law.

While concluding that federal law is not determinative of this issue, we must acknowledge that the tax court's resolution of this issue was not exclusively based on its reliance on federal law. The tax court made factual findings, noted above, that services had been provided and fees had been paid for those services. We cannot ignore those findings. The Commissioner cites little authority for his conclusion that fees for services structured under the FSC law do not qualify as fees under subdivision 19d(11). The tax court found that fees were paid for services. This finding is consistent with federal treatment of those payments as fees for services and the federal requirement of an arms-length transaction price. *See* Treas. Reg. § 1.925(a)–1T(e)(3)(iii) (1994) (temporary regulation). Also, the method of payment, by offsetting bookkeeping entries, is consistent with GAAP. We conclude that the Commissioner has not given us an adequate basis to reject these findings of fact.

Nor are we convinced that *Bunge* is controlling. The issue there was whether commissions paid to the DISC were deductible as "ordinary and necessary business expenses." *Bunge,* 305 N.W.2d at 781. We explained that the determination of whether a payment constitutes an ordinary or necessary business expense is a question of fact and concluded that the payments at issue could not be considered ordinary and necessary business expenses because there was no real business purpose served by the transactions. *Id.* at 783–84. The Commissioner urges us to conclude that because there was no real business purpose served by transactions here, the payments cannot qualify as fees subject to subtraction. But in *Bunge,* the commissions were not eligible for deduc-

---

12. The tax court relied in part on the Revenue Department's rule that:

An incorporation by reference of the Internal Revenue Code in Minnesota Statutes, chapter 290 or 290A shall be interpreted in accordance with any regulations or rulings adopted or issued by the Internal Revenue Service which govern the referenced provisions.

Minn. Rule 8001.9000 (2003).

13. This provision was previously codified as subdivision 19c(10) (1996).

tion unless they were "ordinary and necessary business expenses," and therefore it was appropriate to look for a genuine business purpose for the expense. In contrast, the statute at issue here only requires that the payments be "fees."

■ While the Commissioner may be correct that the legislature intended a more restrictive definition of fees, the legislature did not say so. Rather, the statute provided that an FOC can subtract "fees," and the tax court found that fees were paid. We find no sound basis on which to disagree. We reiterate that we are unwilling to write into a statute what the legislature did not. *Green Giant,* 534 N.W.2d at 712. We therefore hold that the tax court did not err when it determined that Minn.Stat. § 290.01, subd. 19d(11), allowed HTI to take a subtraction of 80 percent of "royalties, fees, or other like income" paid by Export for the tax years in issue.

### III.

■ The third tax court ruling challenged in this appeal is that HTI was not entitled to take the dividend-received deduction under Minn.Stat. § 290.21, subd. 4 (1998), for the tax years in issue because dividends paid by FSCs were excluded from the deduction. HTI contends that the tax court erred by construing the FSC dividend exclusion to apply to dividends deemed paid as well as those actually paid, and that so construed, the exclusion violates the Foreign Commerce Clause of the United States Constitution.

Minnesota Statutes § 290.21, subd. 4(a)(1), allows a corporation to deduct from its taxable net income "[e]ighty percent of dividends received by a corporation during the taxable year from another corporation, in which the recipient owns 20 percent or more of the stock." As an FOC, the adjusted net income of Export was deemed to be paid as a dividend to its parent-shareholder, HTI, under Minn.Stat. § 290.17, subd. 4(g).[14] HTI sought to deduct the deemed dividends from Export under section 290.21, subd. 4(a)(1). The tax court agreed with the Commissioner's disallowance of this deduction based on subdivision 4(e) of section 290.21, which expressly denies the dividend-received deduction to FSCs. Subdivision 4(e) states that "[t]he deduction provided by this subdivision does not apply if the dividends are paid by a FSC as defined in section 922 of the Internal Revenue Code." Minn.Stat. § 290.21, subd. 4(e).

HTI, which was deemed to receive Export's adjusted net income as a dividend each year, contends that the statute denying the dividend-received deduction "if the dividends are paid by a FSC" should be construed to apply only to dividends that were *actually* paid to the parent corporation and not to dividends that were only *deemed* paid under section 290.17, subd. 4(g). HTI argues that we should read the word "paid" in subdivision 4(e) to mean only "actually paid" because deemed dividends, which were established by the legislature in 1988 along with FOCs, did not

14. Minnesota Statutes § 290.17, subd. 4(g), provides, in relevant part:

The adjusted net income of a foreign operating corporation shall be deemed to be paid as a dividend on the last day of its taxable year to each shareholder thereof, in proportion to each shareholder's ownership, with which such corporation is engaged in a unitary business. Such deemed dividend shall be treated as a dividend under section 290.21, subdivision 4.

Dividends actually paid by a foreign operating corporation to a corporate shareholder which is a member of the same unitary business as the foreign operating corporation shall be eliminated from the net income of the unitary business in preparing a combined report for the unitary business.

exist when the denial of the dividend-received deduction to FSCs was enacted in 1986. HTI reasons that the legislature's use of the word "paid" in 1986 therefore referred only to actually-paid dividends, and because the statute was not changed in 1988 when deemed FOC dividends were created, it still applies only to actually-paid dividends. HTI's primary argument, however, is that subdivision 4(e) must be construed to apply only to actually-paid dividends because to construe it otherwise would violate the Foreign Commerce Clause of the United States Constitution by discriminating against foreign-incorporated FOCs—that is, FOCs that are also FSCs.

We agree with the tax court that the plain language of the relevant statutes leads to the conclusion that even dividends *deemed* paid by a FSC to its parent are excluded from the dividend-received deduction by subdivision 4(e). Section 290.17, subdivision 4(g), expressly provides that the adjusted net income of an FOC "shall be deemed to be *paid* as a dividend." (Emphasis added.) Subdivision 4(g) further provides that "such deemed dividend shall be treated as a dividend under section 290.21, subdivision 4." "Deem" is defined as "[t]o treat (something) as if (1) it were really something else, or (2) it had the qualities that it does not have." *Black's Law Dictionary* 447 (8th ed. 2004). We have noted that "in our statutes the word 'deemed' appears to be treated as creating a conclusive presumption." *First Nat'l Bank of Mankato v. Wilson,* 234 Minn. 160, 164, 47 N.W.2d 764, 767 (1951). Thus, under subdivision 4(g)

the income of an FOC is to be treated as if it were *paid* as a dividend under section 290.21, subdivision 4. Notably, in providing that the deemed dividend shall be treated as a dividend under subdivision 4 of section 290.21, the legislature did not exempt any subparts of subdivision 4, particularly subpart (e), the FSC-dividend-exclusion provision.

Under the plain language of section 290.21, subdivision 4(e), the phrase "if the dividends are paid by a FSC" encompasses dividends deemed to be paid as well as dividends actually paid. HTI's statutory arguments provide no sound basis to read "paid" only as "actually paid." Where the legislature intended to distinguish between deemed dividends and actually-paid dividends, it did so explicitly. *See* Minn.Stat. § 290.17, subd. 4(g) (referring separately to "deemed dividends" and "[d]ividends actually paid").[15] There is no such distinction expressed in Minn.Stat. § 290.21, subd. 4(e). Again, we "will not supply that which the legislature purposefully omits or inadvertently overlooks." *Green Giant,* 534 N.W.2d at 712.

HTI argues that the tax court's reasoning that the plain language of the statutes requires denial of the dividend-received deduction for deemed FSC dividends is undermined by the Commissioner's former position, expressed in the Minnesota Corporation Franchise Tax Instructions from 1991 through 2001, that dividends of FSCs that were also FOCs were eligible for the dividend-received deduction.[16] HTI argues that the Commissioner's long-standing interpretation of the statute should be

---

15. See n. 14, *supra.*

16. The corporate franchise tax instructions from 1991 through 1997 provided that if a FSC also fit the definition of an FOC, then its exempt foreign trade income would be included as a deemed dividend when computing its adjusted net income and that the deemed

dividend would be eligible for the dividend-received deduction. The tax instructions from 1998 through 2001 were not as explicit, but indicated that the dividend-received deduction would be available to FSCs that also were classified as FOCs.

given weight, at a minimum to establish the ambiguity of the statutory language.

■ Administrative interpretations do not control our interpretation of a statute when the language of the statute is clear. We only look to legislative and administrative interpretations of a statute when the words of the law are not explicit. Minn. Stat. § 645.16 (2004). Revenue notices do not have the force and effect of law and have no precedential effect. Minn.Stat. § 270.0604, subd. 2 (2004). HTI's argument gives more weight to the revenue instructions than we have indicated they should be given. We therefore conclude that the tax instructions do not create an ambiguity in the statute and that the plain language of the statute controls.[17] Accordingly, we hold that the tax court did not err in determining that the statutes did not entitle HTI to take the dividend-received deduction under Minn.Stat. § 290.21, subd. 4, for the tax years in issue.

HTI's primary argument for adopting an alternate construction of section 290.21, subd. 4(e), is that denial of the dividend-received deduction to FSCs violates the Foreign Commerce Clause of the United States Constitution.[18] HTI argues that as construed by the tax court the statute impermissibly discriminated against foreign commerce because by denying the dividend-received deduction to FSCs, the statute only denied the dividend-received deduction to FOCs that were incorporated in a foreign country. All other FOCs were incorporated domestically. HTI contends

that we should either construe Minn.Stat. § 290.21, subd. 4, so that it applies only to dividends actually paid by FSCs to avoid an unconstitutional result, or hold that the statute is unconstitutional.

■ We are very deferential in our review of tax legislation because tax policy is a peculiarly legislative function, involving political give-and-take. *Minn. Automatic Merch. Council v. Salomone*, 682 N.W.2d 557, 561–62 (Minn.2004). We begin with the presumption that the legislature did not intend to violate either the United States Constitution or the Minnesota Constitution. Minn.Stat. § 645.17 (2004). A taxpayer challenging the constitutionality of a state tax statute bears a heavy burden of proving that discrimination exists because of the wide latitude that states have to establish their taxation schemes and because we declare statutes unconstitutional only when absolutely necessary. *Chapman*, 651 N.W.2d at 830; *Wilson v. Comm'r of Revenue*, 656 N.W.2d 547, 552 (Minn.2003). We will uphold a statute unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt. *Chapman*, 651 N.W.2d at 830. Every presumption is invoked in favor of the constitutionality of a statute. *Salomone*, 682 N.W.2d at 561.

■ The Commerce Clause states that "the Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States." U.S.

---

**17.** HTI also argues that a 2003 amendment to Minn.Stat. § 290.01, subd. 19d, provides evidence that the legislature also understood FSCs to be eligible for the dividend-received deduction. *See* Act of May 25, 2003, ch. 127, art. 3, § 9, 2003 Minn. Laws 731, 785. We are not bound to accept a subsequent legislature's interpretation of a prior legislature's intent. *A & H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 550 (Minn.2000).

**18.** The tax court had jurisdiction to consider this constitutional issue because in accordance with *Erie Mining Co. v. Commissioner of Revenue*, 343 N.W.2d 261, 264 (Minn. 1984), the tax court transferred the constitutional issues to the Ramsey County District Court, and the district court transferred the issue back to the tax court for decision.

Const. art. I, § 8, cl. 3.[19] We determine Commerce Clause challenges in a two-step inquiry: (1) we first determine whether the challenged statute implicates the Commerce Clause, and (2) if it does, we then evaluate whether the statute violates the Commerce Clause. *Chapman,* 651 N.W.2d at 832. The Commerce Clause is implicated here because the term "commerce" includes the flow of dividends from a foreign subsidiary to its parent. *Kraft Gen. Foods, Inc. v. Iowa Dep't of Revenue & Fin.,* 505 U.S. 71, 76, 112 S.Ct. 2365, 120 L.Ed.2d 59 (1992).

The Supreme Court has provided a four-part test to determine whether a state tax violates the Commerce Clause, *see Complete Auto Transit v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), with two additional factors to be considered if foreign commerce is involved, *see Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 451, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979). The parties agree that the only factor at issue here is the *Complete Auto* factor of whether the tax discriminates against, in this case, foreign commerce.

The Supreme Court has stated that a tax violates the Commerce Clause anti-discrimination requirement if it is "facially discriminatory, has a discriminatory intent, or has the effect of unduly burdening interstate commerce." *Amerada Hess Corp. v. Director, Div. of Taxation, N.J. Dep't of the Treasury,* 490 U.S. 66, 75, 109 S.Ct. 1617, 104 L.Ed.2d 58 (1989); *see also Caterpillar,* 568 N.W.2d at 699. In *Kraft,* the Supreme Court held that an Iowa statute that denied a dividend-received deduction to foreign subsidiaries while allowing it for domestic subsidiaries discriminated in violation of the Foreign Commerce Clause. 505 U.S. at 82, 112 S.Ct. 2365.

HTI contends that there is no meaningful distinction between the discrimination held unconstitutional in *Kraft* and the discrimination in the statute challenged here, if construed to deny the dividend-received deduction for FSC deemed dividends.

The tax court rejected HTI's constitutional argument for two reasons. The court concluded that denying the dividend-received deduction to FOCs that are FSCs while allowing it to other FOCs did not unconstitutionally discriminate against foreign commerce because the different treatment resulted from differences in the nature of FOCs and FSCs and not from their location of incorporation. The tax court also pointed out that FSCs could incorporate in United States possessions as well as in foreign countries. We conclude that these grounds are insufficient to defeat HTI's Foreign Commerce Clause claim.

■ First, we disagree with the tax court's apparent conclusion that the different treatment of FOCs and FSCs did not violate the Foreign Commerce Clause because FSCs could incorporate "in the United States," noting that a majority were incorporated in the U.S. Virgin Islands, a United States possession. Presumably the tax court viewed incorporation of FSCs in U.S. possessions as establishing that denial of the deduction was not imposed only on foreign corporations, and the statute therefore did not discriminate based on location of incorporation. However, HTI correctly points out that U.S. possessions are not the United States, and a corporation incorporated in a possession is foreign, not domestic. *See Hooven & Allison Co. v. Evatt,* 324 U.S. 652, 674, 65 S.Ct. 870, 89 L.Ed. 1252 (1945), overruled on other grounds by *Limbach v. Hooven &*

19. The part of the Commerce Clause that authorizes Congress to regulate commerce with foreign nations is referred to as the "Foreign Commerce Clause."

*Allison Co.,* 466 U.S. 353, 361, 104 S.Ct. 1837, 80 L.Ed.2d 356 (1984).

The tax court also embraced the Commissioner's argument that the different "nature" of FSCs provides a legitimate basis for the discriminatory treatment other than place of incorporation. This argument is based on the Supreme Court's statement in *Kraft* that the "Commerce Clause is not violated when the differential tax treatment of two categories of companies 'results solely from differences between the nature of their businesses, not from the location of their activities.'" *Kraft,* 505 U.S. at 78, 112 S.Ct. 2365 (quoting *Amerada Hess,* 490 U.S. at 78, 109 S.Ct. 1617).

The different "nature" of FSCs that the Commissioner argues is the permissible basis for differential treatment is that FSCs were intended to be merely shell entities created solely for the purpose of garnering favorable federal tax treatment. The Commissioner relies on the statement of Minnesota State Senator Novak, made in presenting the bill that proposed to combine a FSC's income with its parent's income for Minnesota tax purposes, that FSCs "are essentially sham or paper corporations through which export sales are funneled to avail the parent corporation to certain federal tax benefits." Tax Conference Comm. Hearing on H.F. 1, 1986 Leg., 1st Special Sess. (Minn.1986) (transcript) (explanation of amendment in Senate proposal by Senator Novak before Conference Committee Meeting, adding S.F. 1692 to the tax bill, H.F. 1).

Whether other legislators viewed FSCs as sham corporations, or as legitimate legal entities through which income generated by the operations of domestic corporations that would otherwise be included in the Minnesota combined group could be channeled through another corporation to avoid taxation, the fallacy in the Commissioner's argument is that this does not necessarily differentiate FSCs from domestic FOCs. As we stated in section I, *supra,* in which we determined that FSCs were eligible to be FOCs for the tax years in issue, the Minnesota legislature did not require that FOCs have actual operations. In other words, because a FSC could qualify under Minnesota law as an FOC, it follows that the requirements established by the Minnesota legislature for an FOC were no greater than those established by the federal Congress for a FSC—if they were greater, a FSC could not satisfy them. This being so, there is no basis to conclude that the domestic FOCs that are not FSCs must necessarily have a nature different than FSCs.

In fact, the definition of an FOC has even fewer requirements than is necessary to be a FSC—essentially, it need only be a domestic corporation (which is defined to include a FSC); be part of a unitary business that has at least one member that is taxable in Minnesota; and either have 80% or more of its property and payroll assigned to a location in a foreign country or have in effect a valid election as a FSC under federal law. Minn.Stat. § 290.01, subd. 6b. Given these minimal requirements for an FOC, there is nothing to prevent any FOC from being an empty shell entity, existing solely to provide tax exemptions, no different in nature from a FSC.[20] Accordingly, the different treatment accorded the dividends of domestic and foreign FOCs cannot be explained based on a difference in their natures. Rather, the only genuine distinguishing

---

**20.** Conversely, just as the minimal requirements for FOCs do not prevent FOCs from having genuine operations, the minimal requirements for FSCs do not prevent FSCs from having genuine operations also.

characteristic is that FSCs are foreign corporations and other FOCs are domestic corporations.[21]

It could be argued that the purpose of granting domestic FOCs the dividend-received deduction while denying it to FSCs that are FOCs was merely to put domestic FOCs on an equal footing with FSCs in terms of overall tax liability. Specifically, allowing the dividend-received deduction to domestic FOCs compensated for the federal tax advantage enjoyed by FSCs.[22] That type of compensatory taxation rationale has been used to uphold differential treatment of domestic and foreign subsidiaries regarding dividend-received deductions in other states. *See In re Morton Thiokol, Inc.*, 254 Kan. 23, 864 P.2d 1175, 1186 (1993) (distinguishing *Kraft* on the basis that dividend-received deduction allowed to domestic subsidiaries but denied to foreign subsidiaries permissibly avoids double taxation of domestic subsidiary where its income is also included and taxed in the unitary combined income); *E.I. Du Pont de Nemours & Co. v. State Tax Assessor*, 675 A.2d 82, 87–88 (Me.1996) (holding that deduction of domestic, but not foreign, subsidiary dividends from parent's income does not violate Foreign Commerce Clause because deduction provides "tax symmetry" where domestic subsidiary's income is included in unitary combined income, while income of foreign subsidiary is not).

But in contrast to the circumstances in *Morton Thiokol* and *Du Pont*, which involved taxes imposed by the same state for which the dividend-received deduction was intended to compensate, the additional tax liability for which the dividend-received deduction would compensate here is *federal* tax liability. In *Kraft*, the Supreme Court rejected reliance on taxation from other jurisdictions as a permissible basis for "compensatory" tax treatment. The Court stated: "We find no authority, however, for the principle that discrimination against foreign commerce can be justified if the benefit to domestic subsidiaries might happen to be offset by other taxes imposed not by Iowa, but by other States and by the Federal Government." *Kraft*, 505 U.S. at 81, 112 S.Ct. 2365. Thus, although the desire to put FOCs and FSCs on equal footing vis á vis federal taxation provides a rational explanation for the Minnesota legislature's choice to allow the dividend-received deduction to domestic FOCs while denying it to FSCs that is unrelated to the foreign nature of the FSCs, because that explanation is premised on the existence of federal tax liability, *Kraft* forecloses reliance on it in this context.

Unlike the tax court, we cannot find an adequate basis on which to distinguish this case from *Kraft*. Therefore, we conclude

**21.** We note also that in *Amerada Hess*, the case in which the Supreme Court held that differences in the nature of the businesses made the differential treatment palatable under the Commerce Clause, the difference in tax treatment *resulted from* the differences in the nature of the businesses (*oil producers v. gas retailers*). 490 U.S. at 78, 109 S.Ct. 1617. In contrast, here the difference in the nature of FSCs and FOCs is proffered by the commissioner more as the rationale for the different treatment, not as something that results in different tax effects because of differing types of business operations. Thus, even if the difference in nature argued by the commissioner

were genuine, it does not appear to be the kind of difference that ameliorates the discrimination against foreign commerce under *Amerada Hess* as referenced in *Kraft*.

**22.** A FSC is not subject to federal tax on its exempt foreign trade income. I.R.C. § 923 (1994) (repealed in 2000). For corporate-owned FSCs, the Internal Revenue Code would exempt more than 65 percent of the FSC's income from federal income tax when administrative pricing rules are used. In contrast, domestic FOCs receive no federal tax benefit for being FOCs.

that if the dividend-received deduction exclusion were construed to apply to deemed dividends of FSCs, it would unlawfully discriminate in violation of the Foreign Commerce Clause.

■■■ We must then decide whether the statute can be construed to preserve its constitutionality as suggested by HTI. Where possible, this court should interpret a statute to preserve its constitutionality. Minn.Stat. § 645.17(3) (2004) ("In ascertaining the intention of the legislature the courts may be guided by the following presumptions: * * * (3) the legislature does not intend to violate the Constitution of the United States or of this state * * *."). The question is whether, having concluded that the plain language of the statute favors denial of the deduction for FSC dividends, both deemed and actually paid, we can construe it otherwise in order to avoid the constitutional problem.

We have stated that "[i]f the language of a law can be given two constructions, one constitutional and the other unconstitutional, the constitutional one must be adopted, although the unconstitutional construction may be more natural." *Head v. Special Sch. Dist. No. 1*, 288 Minn. 496, 506, 182 N.W.2d 887, 893 (1970), overruled on other grounds by *Nyhus v. Civil Serv. Bd.*, 305 Minn. 184, 186 n. 1, 232 N.W.2d 779, 780 n. 1 (1975). Although we find more natural the construction that the exclusion of the dividend-received deduction for FSCs applies to deemed dividends as well as actually-paid dividends, we cannot say that the alternative is so contrary to the statutory language that it cannot be adopted to preserve the constitutionality of the law. This conclusion is supported by the fact that the commissioner's tax instructions stated for many years that FSC deemed dividends were eligible for the dividend-received deduction and by the 2003 legislation in which the legislature acknowledged that

the dividend-received deduction could have been taken for FSC deemed dividends. See n. 17, *supra.* Although these factors were not enough on their own to tip the scales of statutory interpretation in the face of the plain language indicating otherwise, they are relevant to the question whether the language is susceptible to a construction that would avoid unconstitutionality. We also note that prior to the creation of FOCs in 1988, the legislature enacted the exclusion from the dividend-received deduction for FSC dividends, and that exclusion applied only to dividends actually paid. This provides further evidence that limiting the exclusion in this manner is not something that the legislature would not countenance.

Because we have concluded that construing Minn.Stat. § 290.21, subd. 4(e), to deny the deduction for FSC deemed dividends as well as dividends actually paid would violate the Foreign Commerce Clause by unlawfully discriminating against FSCs that are also FOCs, we hold that section 290.21, subd. 4(e), must be construed to apply only to actually-paid FSC dividends, leaving deemed dividends of FSCs eligible for the dividend-received deduction.

Affirmed in part and reversed in part.