In the Matter of the Application of MINNESOTA POWER for Authority to Increase Rates for Electric Service in Minnesota.

No. A11–352.

Court of Appeals of Minnesota.

Dec. 5, 2011.

Review Granted Feb. 14, 2012.

Christopher D. Anderson, Allete, Inc. d/b/a Minnesota Power, Duluth, MN; and Sam Hanson, Thomas E. Bailey, Elizabeth M. Brama, Briggs and Morgan, P.A., Minneapolis, MN, for relator Allete, Inc.

Jeanne M. Cochran, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Public Utilities Commission.

Lori Swanson, Attorney General, Karen D. Olson, Deputy Attorney General, Ronald M. Giteck and Ian Marc Dobson, Assistant Attorneys General, St. Paul, MN, for respondent Residential and Small Business Utilities Division of the Office of the Attorney General.

Andrew P. Moratzka, Robert S. Lee, Mackall, Crounse & Moore, PLC, Minneapolis, MN, for respondent ArcelorMittal USA, Inc.

Considered and decided by PETERSON, Presiding Judge; LARKIN, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

In this certiorari appeal from a final rate order, relator ALLETE Inc. d/b/a Minnesota Power, challenges an order by respondent Minnesota Public Utilities Commission setting interim rates pursuant to Minn.Stat. § 216B.16, subd. 3(b). We affirm.

## FACTS

On November 2, 2009, Minnesota Power filed with the commission a notice of change in rates seeking approval of an $81 million rate increase. On the same day, Minnesota Power filed a petition requesting approval to collect $73.3 million in interim rates.

Each of the non-commission respondents—Large Power Intervenors (LPI), Boise Cascade Inc., and the Office of the Attorney General–Residential Utilities Division (OAG)—filed comments with the commission objecting to the proposed amount of interim rates. The non-commission respondents argued that exigent circumstances, particularly the economic conditions in Minnesota Power's service area, warranted a lesser interim rate. LPI requested that any increase in interim rates be capped at five percent. Boise requested no interim rate increase be imposed on it or other large power customers and that any interim rate increase for other customer classes be capped at five percent. OAG advocated for no interim rate increase for residential and small business customer classes.

The commission's staff completed briefing papers, in which they evaluated both the interim rates proposed by Minnesota Power and the objections raised by the non-commission respondents. Staff advised that the proposed interim rates generally complied with Minnesota statutes and rules, and questioned whether there was an adequate basis for limiting a rate increase to five percent or less. Staff suggested, however, that the commission might be able to limit the rate increase based on Minnesota Power's rate-filing history, which reflected that the commission generally approved between 45 and 58% of Minnesota Power's rate-increase requests.

On December 15, 2009, the commission conducted proceedings to consider the completeness of Minnesota Power's rate-increase notice as well as the appropriate level of interim rates. The commission heard from Minnesota Power and each of the non-commission respondents during the proceedings. The commission also heard from Energy CENTS, which provided additional background on the state of the economy in the 24 counties within Minnesota Power's service area. The commission deliberated and determined to reduce the proposed interim rate by 40% to $48.5 million.

On December 30, 2009, the commission issued an order setting interim rates. In that order, the commission justified the 40% reduction in the proposed interim rate:

> Three extraordinary circumstances combine to create exigent circumstances in this case: the unprecedented size of the proposed rate increase (nearly twice the size of any other increase requested by [Minnesota Power] in the past 22 years); the extremely short window (one day)

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

between the effective date of [Minnesota Power's] last rate increase and this rate increase request; and the worst economic downturn in the past 60 years. Together, these factors clearly carry serious potential for rate shock—and even outright hardship—for [Minnesota Power's] customers.

The commission acknowledged that the impact on ratepayers was "only one side of the exigent circumstances equation"; that Minnesota Power "has made its rate request in good faith with careful documentation and detailed explanation"; and that Minnesota Power "is generally entitled to recover its cost of service and is entitled to earn a fair rate of return." The commission recognized, however, that "[a]s a practical matter ... in each of [Minnesota Power's] rate cases over the past 22 years, the revenue amount ultimately authorized by the Commission has been far less than the amount requested by [Minnesota Power], never exceeding 56% of its initial rate increase request."

Although the Minnesota Statutes provide for refund of interim rates paid in excess of the ultimately approved final rate, the commission concluded that, because of the condition of the economy, refunds "may not make some ratepayers whole." The commission concluded that a 40% reduction in the proposed interim rate reflected the best balancing of these various interests:

> This action protects [Minnesota Power] by recognizing its stated need for additional revenues. It protects ratepayers by substantially limiting immediate rate increases. And it protects the public interest by honoring the twin principles that rates approved by the [c]ommission in the last rate case are assumed to be just and reasonable and that utilities are normally entitled to begin collecting some portion of their claimed new, in-

creased revenue requirements while rate cases are pending.

On November 2, 2010, following contested-case proceedings, the commission issued an order authorizing a $53.5 million annual rate increase—$27.3 million less than Minnesota Power had requested, but $5 million more than the approved interim rates. Minnesota Power petitioned for reconsideration of issues including the interim rates. On January 20, 2011, the commission denied reconsideration of the interim-rates issue. This appeal followed.

## ISSUE

Did the commission err in setting interim rates?

## ANALYSIS

■ This court's review of the commission's order is governed by the Administrative Procedure Act (APA), Minn.Stat. §§ 14.63–.69 (2010). Minn.Stat. § 216B.52 (2010). Under the APA, this court can affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) unsupported by substantial evidence in view of the entire record as submitted; or

(f) arbitrary or capricious.

Minn.Stat. § 14.69. Administrative decisions enjoy a "presumption of correctness," and thus the burden is on the challenging party to show agency error. *In re*

*Excelsior Energy, Inc.*, 782 N.W.2d 282, 289 (Minn.App.2010).

■■■■ This appeal turns on statutory interpretation, which generally is subject to de novo review by this court. *See, e.g., Minnegasco v. Minn. Pub. Utils. Comm'n,* 549 N.W.2d 904, 907 (Minn.1996) (holding that "[t]he determination of whether the [commission] has the statutory authority to act ... raises [a] question[ ] of law which [is] subject to de novo review"). But "judicial deference, rooted in the separation of powers doctrine, is extended to an agency decision-maker in the interpretation of statutes that the agency is charged with administering and enforcing." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.,* 624 N.W.2d 264, 278 (Minn.2001). And we have explained that

> [d]espite this court's authority to conduct de novo review of an agency's statutory interpretation, this court recently noted that when an agency reasonably interprets a statute, it is the role of the legislature or the supreme court, and not the role of this court, to overrule that interpretation.

*In re Application of N. State Power Co. for Approval of its 1998 Res. Plan,* 604 N.W.2d 386, 390 (Minn.App.2000), *review denied* (Minn. Mar. 28, 2000) (NSP).

Minn.Stat. § 216B.16 (2010) provides the procedure for a public utility seeking to increase rates charged to consumers. Under that section, a utility is required to give 60 days' notice to the commission before raising rates. *Id.,* subd. 1. The commission may then suspend the effective date of the new rates for a period of up to ten months from the date that the notice is filed, during which time the commission must resolve all issues regarding the reasonableness of the rates. *Id.,* subd. 2. If the commission suspends the proposed new rate, however, it must also "order an interim rate schedule into effect not later than 60 days after the initial filing date." *Id.,* subd. 3(a). With respect to the calculation of interim rates, section 216B.16, subd. 3(b) provides:

> Unless the commission finds that exigent circumstances exist, the interim rate schedule shall be calculated using the proposed test year cost of capital, rate base, and expenses, except that it shall include: (1) a rate of return on common equity for the utility equal to that authorized by the commission in the utility's most recent rate proceeding; (2) rate base or expense items the same in nature and kind as those allowed by a currently effective order of the commission in the utility's most recent rate proceeding; and (3) no change in the existing rate design.

Minnesota Power challenges (1) the commission's determination that the statutory formula does not apply when it finds exigent circumstances; (2) the finding of exigent circumstances in this case; and (3) the amount of interim rates set by the commission.[1] We address each challenge in turn.

---

1. Minnesota Power also asserts that the commission exceeded its statutory authority by considering comments from the non-commission respondents because interim rates are to be set "ex parte without a public hearing." Minn.Stat. § 216B.16, subd. 3(a). We agree with the commission that Minnesota Power waived this argument by failing to raise it in its petition for reconsideration. *See* Minn. Stat. § 216B.27, subd. 2 (precluding party from arguing issue to court that was not raised in petition for rehearing). Moreover, we note that, read contextually, the requirement that interim rates be set "ex parte without a public hearing" appears to have been intended to differentiate between the streamlined interim-rates procedure and the contested-case proceeding generally applicable to rate cases, rather than to exclude interested parties from the interim-rates proceedings altogether. *Compare* Minn.Stat. § 216B.16, subd. 2(b) (providing that disputes over the

## I.

■ Minnesota Power's first challenge centers on a dispute over whether and to what extent the statutory interim-rates formula applies when the commission makes a finding of exigent circumstances. The commission asserts that the initial phrase—"[u]nless the commission finds that exigent circumstances exist"—modifies the entire remainder of the sentence, and thus that the statutory formula has no application when it finds exigent circumstances. Minnesota Power asserts that the initial phrase modifies only the language directly following it—"the interim rate schedule shall be calculated using the proposed test year cost of capital, rate base, and expenses"—and that the rest of the sentence applies regardless of an exigent-circumstances finding. In other words, Minnesota Power contends that the interim-rate calculation must in any circumstance incorporate the rate of return, rate base or expense items and rate design last approved by the commission.

We agree with the commission that, under the plain language of the statute, the statutory formula does not apply when the commission finds that exigent circumstances exist. *See In re Otter Tail Power Co.*, 417 N.W.2d 677, 680 (Minn.App.1988), *review denied* (Minn. Mar. 23, 1998) ("The legislature has provided that 'unless the [c]ommission finds that exigent circumstances exist,' the [c]ommission should calculate an interim rate schedule in accordance with procedures set forth in the statute."). This is not a circumstance in which a statute creates an exception to an exception, as Minnesota Power's argument suggests. Rather, the "except" clause is part of the statutory formula, which ap-

plies in the absence of exigent circumstances. Thus, we conclude that when, as in this case, the commission finds the existence of exigent circumstances, it has discretion to determine reasonable interim rates consistent with general rate-making policies. *Cf. NSP*, 604 N.W.2d at 390 (explaining that, because environmental statute was "couched in general terms," the agency was left "the duty of determining precisely what standards will fulfill the environmental policy enunciated by the legislature" (quotation omitted)).

■ In so concluding, we note that, even when not constrained by the statutory interim-rates formula, the commission is not afforded unfettered discretion. The commission is obligated to set interim rates in any case when it suspends the effective date of new rates, Minn.Stat. § 216B.16, subd. 3(a), and all rates set by the commission must be "just and reasonable." Minn.Stat. § 216B.03 (2010). "In order to establish just and reasonable retail rates, the [commission] must consider the right of the utility and its investors to a reasonable return, while at the same time establishing a rate for consumers which reflects the cost of service rendered plus a reasonable profit for the utility." *Minnegasco*, 549 N.W.2d at 908; *see also* Minn.Stat. § 216B.16, subd. 6 (providing that commission, in setting just and reasonable rates, "shall give due consideration to the public need for adequate, efficient, and reasonable service and to the need of the public utility for revenue sufficient to enable it to meet the cost of furnishing the service, including adequate provision for depreciation of its utility property used and useful in rendering service to the public, and to earn a fair and reasonable re-

---

reasonableness of rates generally must be referred "to the Office of Administrative Hearings with instructions for a public hearing as a contested case pursuant to chapter 14")

*with* Minn.Stat. § 216B.16, subd. 3(a) (providing that "[t]he commission shall order the interim rate schedule ex parte *without a public hearing*" (emphasis added)).

turn upon the investment in such property"). These general principles governing all ratemaking compel the commission to employ reasoned judgment in setting interim rates, even when the statutory formula does not apply.

## II.

■ Minnesota Power next challenges the commission's exigent-circumstances finding. The commission found exigent circumstances based on the combination of the economic conditions in Minnesota Power's service area; the unprecedented size of the rate-increase request; and the recency of Minnesota Power's last rate case. Minnesota Power asserts that (1) exigent circumstances must relate to the items encompassed in the statutory formula for interim rates, and (2) because both the timing and amount of the rate increase request were permitted by statute, they cannot constitute exigent circumstances.

The interim-rate statute does not define exigent circumstances, and the Minnesota caselaw has characterized it only generally, stating that "the term 'exigent' bespeaks urgency or emergency." *In re Application of Peoples Natural Gas Co.,* 389 N.W.2d 903, 907 (Minn.1986). Black's Law Dictionary defines exigent circumstances as "[a] situation that demands unusual or immediate action and that may allow people to circumvent usual procedures, as when a neighbor breaks through a window of a burning house to save someone inside." *Black's Law Dictionary* 277 (9th ed.2009). Although the more common application of the term in the criminal context has limited relevance here, we note that in that context, exigent circumstances may be found based on certain single factors or under "a totality of the circumstances test." *State v. Shriner,* 751 N.W.2d 538, 541–42 (Minn.2008).

Applying these understandings of "exigent circumstances," we conclude that the legislature intended to confer upon the commission the flexibility to deal with unusual situations in which it may be inappropriate to apply the statutory interim-rates formula. And we reject, as contrary to the broad language of the statute, Minnesota Power's assertions that exigent circumstances must relate to the items in the statutory formula or cannot be found when the rate-increase otherwise complies with the statute. The statute does not so limit the commission's discretion to find exigent circumstances, and we are precluded from adding to a statute words that the legislature omits. *Hutchinson Tech., Inc. v. Comm'r of Revenue,* 698 N.W.2d 1, 12 (Minn.2005). Thus, we cannot conclude that the commission erred in finding exigent circumstances in this case.

## III.

■■ Finally, Minnesota Power argues that the commission acted arbitrarily by applying an across-the-board reduction to the interim-rate request, rather than reducing particular elements of the rate under the statutory formula. "An agency's determination is arbitrary and capricious when it represents the agency's will and not its judgment." *Otter Tail,* 417 N.W.2d at 680. The record shows that the commission carefully considered and articulated its basis for applying a 40% reduction to the interim-rate request. *Id.* at 680 (rejecting argument that commission acted arbitrarily because the commission's final order "demonstrate[d] an independent and lengthy examination and explanation" of the challenged issue). Accordingly, we reject Minnesota Power's argument that the commission acted arbitrarily in setting interim rates.

## DECISION

Because the commission did not err in finding exigent circumstances, and then

properly exercised its discretion to set interim rates, we affirm.

   **Affirmed.**