MANPOWER, INC., Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. A06–468.

Supreme Court of Minnesota.

Dec. 7, 2006.

Mike Hatch, Attorney General, Catherine M. Keane, Assistant Attorney General,

Bradford S. Delapena, Assistant Attorney General, State of Minnesota, Saint Paul, MN, for Respondent.

Walter A. Pickhardt, Lisa R. Pugh, Faegre & Benson, LLP, Minneapolis, MN, for Relator.

## OPINION

HANSON, Justice.

Relator Manpower Incorporated (Manpower) is a Wisconsin corporation that operates, files a return, and pays taxes in Minnesota. In 1999 and 2000 (the tax years at issue), Manpower excluded the income of its wholly-owned subsidiary, Manpower France (MPF), from the net income it reported in its Minnesota income tax returns, pursuant to Minn.Stat. § 290.17, subd. 4(f) (2004), which states: "The net income and apportionment factors * * * of foreign corporations and other foreign entities which are part of a unitary business shall not be included in the net income or apportionment factors of the unitary business." Following an audit, the Commissioner of Revenue determined that Manpower was required to include MPF's income on its Minnesota income tax returns. The Commissioner reasoned that MPF changed from a foreign to a domestic entity effective July 13, 1999, when it elected to be classified as a partnership for federal income tax purposes by "checking the box" on Internal Revenue Service Form 8832. Manpower appealed the Commissioner's order to the Minnesota Tax Court, arguing that its federal income tax election did not alter its status as a "foreign entity." On cross-motions for sum-

mary judgment, the tax court affirmed the Commissioner's order. We reverse.

Manpower is a Wisconsin corporation that specializes in the recruitment of permanent, temporary, and contract labor and in the assessment and training of employees. It owns approximately 99 percent of MPF.[1] MPF was organized in 1956 under the laws of France as a "*Société à Responsabilité Limitée*" (SARL). A SARL is somewhat akin to a limited liability company under Minnesota law in that its shareholders (also called "associates" or "members") are not personally liable for the company's debts. *Cf.* Minn.Stat. § 322B.303 (2004) (limiting the personal liability of members of a limited liability company).

MPF operates solely in France. It has never conducted business in Minnesota or any other state in the United States. As a SARL that is owned by a United States taxpayer, MPF is treated under federal income tax laws as an association that may be classified as either a corporation or a partnership, at MPF's election. An election to be classified as a partnership is made by simply checking the box on the Internal Revenue Service Form 8832. Treas. Reg. §§ 301.7701–2, –3 (as amended 1999).

Before July 13, 1999, MPF was treated as a corporation for federal income tax purposes. Effective July 13, 1999, MPF elected to be classified as a partnership. Under federal income tax laws, the consequences of this election were: (1) the assets and liabilities of MPF were deemed to have been distributed to its shareholders in liquidation of the corporation as of July 13, 1999, Treas. Reg. § 301.7701–3(g) (as amended 1999); (2) the shareholders were deemed to have contributed all of the dis-

---

1. Manpower UK, a subsidiary of Manpower, owns the remaining one percent of MPF. Although Manpower and Manpower UK operate as a unitary business, MPF is a distinct legal entity from the two.

tributed assets and liabilities to a newly formed partnership as of July 13, 1999, *id.;* and (3) Manpower, as a deemed partner, was thereafter required to include its distributive share of MPF's net income or losses in Manpower's federal income tax returns, I.R.C. § 702(a) (2000).

When MPF elected to be treated as a partnership it also filed a one-time federal partnership informational income tax return. In its return, MPF stated that it was filing solely to effectuate its election and that, as a "foreign partnership" that does not have a source of income in the United States, it is not otherwise required to file federal partnership income tax returns. On its Minnesota income tax returns, Manpower reported its federal gross taxable income but subtracted Manpower's distributive share of MPF's net income because it viewed MPF as still being a "foreign entity."

After auditing Manpower's Minnesota tax returns, the Commissioner determined that Manpower should have included Manpower's distributive share of MPF's net income because MPF was now a "domestic entity." Accordingly, the Commissioner assessed additional corporate franchise taxes against Manpower. After Manpower's administrative appeal with the Commissioner was denied, Manpower appealed to the Minnesota Tax Court, arguing that the plain language of section 290.17, subd. 4(f), requires the exclusion of the net income from a "foreign entity" and that MPF continued to be a "foreign entity" for Minnesota income tax purposes.

Both parties moved for summary judgment. The tax court granted summary judgment in favor of the Commissioner, concluding that MPF became a domestic entity when it elected to be classified as a partnership for federal income tax purposes. *Manpower, Inc. v. Comm'r of Rev-*

*enue,* No. 7739 R, 2006 WL 89842, at *5 (Minn. T.C. Jan. 12, 2006).

Manpower acknowledges that MPF's election has some "parallel consequences for federal and Minnesota purposes." Manpower agrees that, for Minnesota income tax purposes, MPF should be treated as if the SARL was liquidated and its assets were contributed to a partnership. But Manpower argues that MPF's change from a corporation to a partnership only changed the "classification," meaning the legal nature of the entity, not the nationality of that entity. Manpower argues that the partnership resulting from MPF's election for federal tax purposes is a foreign partnership.

■ We may review any final order of the tax court on the ground that the tax court lacked jurisdiction or committed an error of law or that its order was not justified by the evidence or in conformity with the law. Minn.Stat. § 271.10, subd. 1 (2004); *Cmty. Mem'l Home at Osakis, Minnesota, Inc. v. County of Douglas,* 573 N.W.2d 83, 86 (Minn.1997). Where the facts are undisputed, we review the tax court's legal determinations, including the interpretation of statutes, de novo. *Busch v. Comm'r of Revenue,* 713 N.W.2d 337, 342 (Minn.2006); *Kmart Corp. v. County of Stearns,* 710 N.W.2d 761, 765 (Minn. 2006) ("[T]his court is not bound by decisions of the tax court, especially in the area of statutory interpretation.").

*The Unitary Business Principle*

The parties disagree about the extent to which this decision should be guided by the unitary business principle. Because we conclude that this principle does provide some context for Minnesota's exclusion of the net income and allocation factors of a "foreign entity," we will briefly discuss it here.

■■ Under the Due Process Clause of the Fourteenth Amendment, a state may tax income generated in interstate commerce if there is: (1) a "minimal connection" between the interstate activities generating the income and the state; and (2) a "rational relationship" between the income attributed to the state and the "intrastate values" of the business being taxed. *Mobil Oil Corp. v. Comm'r of Taxes,* 445 U.S. 425, 436–37, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980). Income earned in one state may be taxed in another state, even if the income can be separately accounted for, so long as the intrastate and extrastate activities are part of a single "unitary business." Id. at 438, 100 S.Ct. 1223. The unitary business principle recognizes that such contributions to income as functional integration, centralization of management, and economies of scale arise "from the operation of the business as a whole." Id. Therefore characterizing the income of the business as having a single identifiable geographical "source" may be misleading. Id.

■ Minnesota applies the unitary business principle by combining the incomes of separate corporations engaged in a unitary business and then apportioning them to Minnesota using an apportionment formula that takes into account the extent to which the unitary business's sales, tangible property and payroll are made, used, and paid in Minnesota. Minn.Stat. § 290.191, subd. 2 (2004) (defining the apportionment formula of general application); *Caterpillar, Inc. v. Comm'r of Revenue,* 568 N.W.2d 695, 696 (1997). Although the Due Process and Commerce Clauses of the United States Constitution would permit inclusion of the income of foreign members of the unitary group, Minnesota has adopted the "water's edge" model of combined reporting, which includes only the income of domestic members of the unitary group.

*Hutchinson Tech., Inc. v. Comm'r of Revenue,* 698 N.W.2d 1, 3–4 (Minn.2005); Minn. Stat. § 290.17, subd. 4(f) (excluding net income and apportionment factors of foreign corporations and other foreign entities). The term "water's edge" refers to the fact that this model does not extend beyond the geographic boundaries of the United States in determining what activities the state will tax. *Caterpillar,* 568 N.W.2d at 696 n. 2.

This water's edge model creates a difference between federal and Minnesota income tax laws: federal income tax law requires a partner to include in the net income reported for a unitary business its distributive share of the net income of both domestic and foreign partnerships that are members of a unitary business, but Minnesota income tax law requires a partner to exclude its distributive share of the net income of a foreign partnership (as a "foreign entity") that is a member of a unitary business.

*The Definitions of "Domestic" and "Foreign" Entities*

The parties agree that the concepts of "domestic" and "foreign" under Minnesota income tax laws are analogous to the concepts of "domestic" and "foreign" under federal income tax law. As such, the parties agree that the term "domestic entity" should be understood to mean an entity "created or organized in the United States, or under the laws of the United States or of any state" and a "foreign entity" means any entity other than a domestic entity. Minn.Stat. § 290.01, subds. 5, 5a (2004); *see also* I.R.C. § 7701(a)(4) (2000) ("The term 'domestic' * * * means created or organized in the United States or under the law of the United States or of any state * * *."); I.R.C. § 7701(a)(5) (2000) ("The term 'foreign' * * * means a corporation or partnership which is not domestic."). We agree with the parties' interpre-

tation. Thus, the narrow issue before us is whether MPF was "created or organized in the United States, or under the laws of the United States or of any State."

*Was MPF Created or Organized Under the Laws of the United States?*

■ The Commissioner argues that when MPF elected to be classified as a partnership for federal income tax purposes, a newly formed partnership was "created or organized" under the income tax laws of the United States. The Commissioner also argues that because Manpower included its distributive share of the MPF's income in its federal taxable income, Manpower must also include this amount in its Minnesota taxable income.

Manpower argues that the words "created or organized * * * under the laws of the United States" are plain on their face and refer to the nationality of the entity, not to the classification of the legal nature of the entity, such as whether it is a corporation or partnership. Manpower argues that because MPF was originally created and organized in France, and operates solely in France, MPF is still a foreign entity and the only effect of its check-the-box election is to convert it from a foreign corporation to a foreign partnership for purposes of federal income taxes.

Manpower's arguments are persuasive for several reasons. First, although MPF is "deemed" to be a partnership under federal tax laws, a partnership cannot actually be created or organized under federal income tax laws, or even under any

---

**2.** Federal law provides the mechanism for the creation of legal entities in only very limited situations, none of which is present here. *See, e.g.,* 12 U.S.C. §§ 21–216(d) (2000) (national banks).

**3.** At oral argument, the Commissioner referred us to the exception contained in the federal tax law's definition of "domestic," which means "created or organized in the United States or under the law of the United

---

other federal laws.[2] In the United States, partnerships can only be created or organized under the laws of the various states, such as under the Uniform Partnership Act in Minnesota. *See* Minn. Stat. § 323A (2004). The Commissioner has not referred us to any federal law which provides a mechanism for the creation or organization of a partnership and the Commissioner does not claim that MPF was created or organized under any state partnership law.[3] Nor do the Treasury Regulations that permit foreign entities like MPF to elect partnership status for federal income tax purposes define what persons are eligible to be partners, what acts or documents are necessary to form a partnership, what legal attributes attach to a partnership, or what rights and obligations are granted to or imposed on the partners.

Second, the federal regulation authorizing the election to be treated as a partnership refers only to the classification of the entity, not to its nationality. It states:

> *Association to partnership.* If an eligible entity *classified* as an association elects * * * to be *classified* as a partnership, the following is deemed to occur: The association distributes all of its assets and liabilities to its shareholders in liquidation of the association, and immediately thereafter, the shareholders contribute all of the distributed assets and liabilities to a newly formed partnership.

States or any State *unless, in the case of a partnership, the Secretary provides otherwise by regulations."* I.R.C. § 7701(a)(4) (emphasis added). But the Commissioner did not cite any regulation where the "Secretary" did "provide otherwise." Because the check-the-box regulations deal only with classification and not nationality, we do not interpret them to "provide otherwise."

Treas. Reg. § 301.7701–3(g)(1)(ii) (emphasis added) (as amended 1999). This regulation says nothing about how an entity is "created or organized" or under which country's laws it was created or organized.

Third, MPF is still a SARL in France. That status is not inconsistent with MPF being deemed a partnership because a SARL "has the attributes of both [a] partnership and [a] corporation. It has limited liability (like a corporation) and limitations on interest-share ownership (like a partnership)." John Charles Newman, *French Tax and Business Law Guide* ¶ 7–400 (2000). And a SARL is considered to have only one nationality, which is usually the place where the SARL's principal office is located. Id. ¶ 5–470. In order to change its nationality, a SARL must transfer its principal office out of France. Id. ¶ 5–490. MPF continues to have its principal office in France and its articles of formation remain on file in France. In other words, the source from which MPF derives its status as a separate legal person remains the laws of France.[4]

The Commissioner relies on language in Hutchinson for the argument that the federal election resulted in MPF becoming a domestic partnership. 698 N.W.2d at 12–13. Although Hutchinson does state that the "deeming" that occurs under federal income tax laws "appears to be treated as creating a conclusive presumption," *see id.* at 13, that presumption would only address MPF's change in form from a corporation to a partnership. The presumption does not dictate any change in MPF's nationality.

We hold that MPF's check-the-box election to be treated as a partnership under federal income tax laws did not result in MPF being "created or organized under the laws of the United States."[5] As a

---

**4.** One treatise confirms that the nationality of an entity is determined by identifying the jurisdiction that grants its charter. 2 Boris I. Bittker & James S. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 15.01[3] (7th ed.2000) (stating that "an entity is a domestic corporation if it is treated as a corporation for U.S. tax purposes and has a charter or similar document creating it from either the United States, one of the fifty states, or the District of Columbia; all others are 'foreign' corporations"). The United States Supreme Court has also suggested that whether a corporation is foreign or domestic is dependent on its "charter." *See, e.g., Can. Southern R. Co. v. Gebhard,* 109 U.S. 527, 537, 3 S.Ct. 363, 27 L.Ed. 1020 (1883) ("A corporation 'must dwell in the place of its creation, and cannot migrate to another sovereignty,' though it may do business in all places where its charter allows * * *. But wherever it goes for business it carries its charter, *as that is the law of its existence* * * *."). We have expressed a similar view on nationality. *See, e.g., State ex rel. Ohsman & Sons, Co. v. Starkweather,* 214 Minn. 232, 237, 7 N.W.2d 747, 749 (1943) (holding that while a state statute granted a foreign corporation the "rights and privileges" enjoyed by domestic corporations, it did not "transform such corporations into domestic or resident corporations").

**5.** Our conclusion is confirmed by Treas. Reg. § 301.7701–5(a) (2004) ("The determination of whether an entity is domestic or foreign is made independently from the determination of its corporate or non-corporate classification."). Although the Commissioner argues that this regulation should not be applied retroactively, it can be argued that the regulation is only a codification of the pre-existing rule. *See, e.g.,* 69 Fed.Reg. 49809 (Aug. 12, 2004):

> Under the existing rules, the characterization of a business entity for Federal tax purposes is established in two separate and independent steps. The first involves a determination of whether the entity is a corporation or a non-corporate entity (e.g., a partnership). The second involves a determination of whether the entity is foreign or domestic.

(Emphasis added.) The Commissioner agrees that this regulation precludes Minnesota from treating MPF as a domestic entity after the regulation's effective date of January 30, 2006, but argues that the regulation is not

result, MPF remained a foreign entity and Manpower was required to exclude its distributive share of MPF's net income and apportionment factors from the net income and apportionment factors that Manpower reported in its Minnesota income tax returns.

Reversed.

retroactive. We view the regulation as a correct description of the effect of MPF's election when made in 1999.