**ASHLAND INC. and Affiliates,
Respondent,**

v.

**COMMISSIONER OF REVENUE,
Relator.**

**A16-1257**

Supreme Court of Minnesota.

Filed: August 2, 2017

Walter A. Pickhardt, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for respondent.

Lori Swanson, Attorney General, Wendy S. Tien, Assistant Attorney General, Saint Paul, Minnesota, for relator.

## OPINION

HUDSON, Justice.

At issue in this appeal from the tax court is whether the consequences of an election made under federal tax law by a foreign entity owned by respondent Ashland Inc., a domestic unitary business, must be recognized in determining Ashland's Minnesota tax liability. Concluding that the income and apportionment factors of the foreign entity were improperly included in Ashland's combined return, relator Commissioner of Revenue excluded the foreign entity's income and apportionment factors in calculating Ashland's Minnesota tax liability. The tax court disagreed with the Commissioner's conclusion and determined that the consequences of the federal election were properly included in the determination of Ashland's net income on its Minnesota tax returns. The tax court accordingly granted Ashland's motion for summary judgment. The Commissioner appealed, arguing that Minn. Stat. § 290.17, subd. 4(f) (2012), prohibits the inclusion of the foreign entity's income and apportionment factors in the calculation of Ashland's Minnesota tax liability, regardless of its treatment under federal law. We affirm.

## FACTS

The parties have stipulated to most of the relevant facts underlying the Commissioner's appeal. Ashland Inc. is a Kentucky corporation that does business in Minnesota, among other states. In November 2008, Ashland acquired Hercules, a C corporation incorporated under the laws of Delaware. Since Ashland's acquisition of Hercules, Hercules's income has been included in Ashland's consolidated federal income tax return and in Minnesota, in the combined report required by Minnesota's unitary business principle.[1]

1. Minnesota may tax income earned outside of its borders if the intrastate and interstate activities are part of a unitary business. *See Mobil Oil Corp. v. Comm'r of Taxes*, 445 U.S. 425, 438, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980). Minnesota combines the incomes of separate corporations engaged in a unitary business and apportions the income to Minne-

Since 1999 (before Ashland's purchase), Hercules has owned 100 percent of a Luxembourg entity, Hercules SARL.[2] Treasury Regulation § 301.7701-3(a) (2012) provides that "an eligible entity with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner." It is undisputed that Hercules SARL is the type of eligible entity that can "elect its classification for federal tax purposes." *Id.* In 1999, Hercules SARL elected to be "disregarded as a separate entity," and was therefore no longer considered "separate from its owner," Hercules. Hercules SARL signified its election by filing Form 8832 for "Entity Classification Election" with the Internal Revenue Service (IRS) in 1999 (called "checking the box," referring to the box on Form 8832). *See* Treas. Reg. § 301.7701-3(c)(1) (2012) (requiring eligible foreign entities to make their election known to the IRS via Form 8832 at the time of election). Hercules SARL's election to disregard its status as an entity separate from Hercules remained in effect during all years relevant to this appeal.

Over the 3 tax years at issue in this appeal, Hercules SARL operated at a total net loss.[3] Because Hercules SARL elected to disregard its status as an entity separate from its owner, on its federal returns, Ashland treated Hercules SARL as a "sole proprietorship, branch, or division" of Hercules. *See* Treas. Reg. § 301.7701-2(a) (as amended in 2011) ("A business entity with only one owner is classified as a corporation or is disregarded; if the entity is disregarded, its activities are treated in the same manner as a sole proprietorship, branch, or division of the owner."). Therefore, Ashland included the income, losses, and deductions of Hercules SARL for the 3 years at issue as the income, losses, and deductions of Hercules itself when it filed returns with the IRS. The Commissioner agrees that this tax-reporting treatment of Hercules SARL was proper under federal tax law.

Ashland then prepared its combined report of the Ashland-Hercules unitary business to comply with Minnesota tax requirements. Relying on Minn. Stat. § 290.01, subd. 19 (2012), which defines net income as "federal taxable income ... incorporating ... any elections made by the taxpayer," Ashland factored in the election by Hercules SARL to be disregarded as an entity separate from its owner, Hercules. Thus, in its combined report, Ashland treated Hercules SARL "in the same manner as a sole proprietorship, branch, or division of the owner," Hercules, which itself was part of the Ashland-Hercules unitary business. *See* Treas. Reg.

---

sota using a formula that takes into account the extent to which the unitary business's sales, property, and payroll are attributable to Minnesota. Minn. Stat. § 290.191, subd. 2 (2016). In doing so, however, Minnesota does not include the net income and apportionment factors of *foreign* corporations and entities that are part of the unitary business. *See* Minn. Stat. § 290.17, subd. 4(f); *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 4 (Minn. 2005). The exclusion of foreign-entity income and factors is known as the "water's edge rule."

2.  A *Société à Responsabilité Limitée* (SARL) is a type of business entity recognized under the laws of certain countries (here, Luxembourg), with an organizational structure analogous to a limited liability company under Minnesota law. *See Manpower, Inc. v. Comm'r of Revenue*, 724 N.W.2d 526, 527 (Minn. 2006).

3.  Ashland is a fiscal year taxpayer, with its fiscal year ending on September 30 each year. Thus, the years at issue in this appeal are those ending on September 30 in 2009, 2010, and 2011. In 2009, Hercules SARL recognized a loss of $291,802,362. For 2010, Hercules SARL recognized income of $150,746,670. For 2011, Hercules SARL recognized a loss of $37,968,392.

§ 301.7701-2(a). The income, losses, and deductions of Hercules SARL were accordingly included as the income, losses, and deductions of Hercules on the combined report of Minnesota net income for the Ashland-Hercules unitary business.

In February 2015, after an audit, the Commissioner determined that Ashland improperly included the income, losses, and deductions of Hercules SARL in its calculation of the Ashland-Hercules unitary business income in 2009, 2010, and 2011. The Commissioner concluded, based on Minn. Stat. § 290.17, subd. 4(f), that as a foreign entity, Hercules SARL's income and losses cannot be included in Ashland's combined report even if the entity was part of a unitary business.[4] *See id.* ("The net income and apportionment factors ... of foreign corporations and other foreign entities which are part of a unitary business shall not be included in the net income or the apportionment factors of the unitary business."). After excluding Hercules SARL's income, losses, and deductions, the Commissioner recalculated the Minnesota net income of the Ashland-Hercules unitary business, and assessed Ashland with $1.167 million in additional taxes, penalties, and interest.

Ashland appealed to the tax court. The Commissioner and Ashland filed cross motions for summary judgment. The tax court granted Ashland's motion and denied the Commissioner's motion. *Ashland Inc. v. Comm'r of Revenue*, No. 08819-R, 2016 WL 6635813, at *9 (Minn. T.C. June 27, 2016).

The tax court agreed with Ashland that Minnesota's "net income" definition, Minn. Stat. § 290.01, subd. 19, required the Commissioner to "recognize the taxpayer's elections for federal income tax reporting purposes," and thus Hercules SARL must be disregarded as an entity separate from Hercules under Minnesota tax law, just as it had been under federal law. *Ashland Inc.*, 2016 WL 6635813, at *4-5. The tax court applied Treas. Reg. § 301.7701-3(g)(1)(iii) (2012), which provides:

> If an eligible entity classified as an association elects ... to be *disregarded* as an entity separate from its owner, the following is deemed to occur: The association *distributes* all of its assets and liabilities *to its single owner* in *liquidation* of the association.

(Emphasis added.) *Ashland Inc.*, 2016 WL 6635813, at *4. Because Hercules SARL's 1999 election had the effect of deeming the disregarded entity to be liquidated and its assets and liabilities distributed to its owner, the tax court concluded that the income, losses, and deductions of Hercules SARL were properly included as the income, losses, and deductions of Hercules on the combined report of the Ashland-Hercules unitary business filed with the Commissioner of Revenue. *Id.* at *4, 9.

The tax court further determined that this tax treatment did not run afoul of the water's edge rule, Minn. Stat. § 290.17, subd. 4(f), which prohibits including the net income and apportionment factors of foreign entities on combined reports, because the income and factors of Hercules SARL were *not* included on the combined

---

4.   The water's edge rule flows from Minnesota's application of the unitary business principle. Although Minnesota is permitted to tax foreign members of a unitary business, *see Barclays Bank PLC v. Franchise Tax Bd.*, 512 U.S. 298, 310, 114 S.Ct. 2268, 129 L.Ed.2d 244 (1994), for the tax years at issue Minnesota taxed only domestic members of a unitary business, Minn. Stat. § 290.17, subd. 4(f). We apply the 2012 version of the statute because that is the version that was in effect for the tax years at issue. *See HMN Fin., Inc. v. Comm'r of Revenue*, 782 N.W.2d 558, 561 (Minn. 2010) (applying the version of the statute "in force during the tax years at issue").

report. *Ashland Inc.*, 2016 WL 6635813, at *10. Rather, the tax court determined, Hercules SARL had "ceased to exist" as a separate entity, and its liquidated assets were reported as part of a domestic entity's (Hercules) business activity on Ashland's combined report. *Id.* at *4-5, 8. The Commissioner now seeks review by certiorari.

## ANALYSIS

The Commissioner seeks review of the tax court's grant of summary judgment to Ashland. Summary judgment "shall be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03; *see* Minn. Stat. § 271.06, subd. 7 (2016) ("[T]he Rules of ... Civil Procedure for the district court of Minnesota shall govern the procedures in the Tax Court."). The facts of this case are undisputed and the only question presented—the proper application of statutes governing the combined report of a unitary business—is a question of statutory interpretation that we review de novo. *See Manpower, Inc. v. Comm'r of Revenue*, 724 N.W.2d 526, 528 (Minn. 2006) ("Where the facts are undisputed, we review the tax court's legal determinations, including the interpretation of statutes, de novo.").

The specific question presented by this appeal is whether the income, losses, and deductions of Hercules SARL can be included as part of Hercules's income, losses, and deductions on the combined report of Ashland's unitary business in Minnesota. To answer this question, we must consider the interplay of three laws: one federal regulation and two state statutes.

The first law is the federal regulation that allows eligible entities to elect a classification under federal tax law. Treasury Regulation § 301.7701-3(a) states:

> ([A]n *eligible entity*) can elect its classification for federal tax purposes.... [A]n eligible entity with a single owner can elect to be classified as an *association* or to be *disregarded* as an entity separate from its owner.

(Emphasis added.) The parties agree that Hercules SARL is an eligible entity and agree that under this regulation, it elected the second option: to be disregarded as an entity separate from its owner, Hercules, under federal tax law. The parties also agree that Ashland filed its federal returns in accordance with Treas. Reg. § 301.7701-2(a), which states that as a disregarded entity, Hercules SARL's "activities are treated in the same manner as a sole proprietorship, branch, or division of" its owner, Hercules. Thus, the effect of an election to disregard entity status, under federal income tax law, is that the income, losses, and deductions of Hercules SARL are reported as part of the income, losses, and deductions of Hercules.

The second relevant law is the definition of "net income" under Minnesota income tax law. Minnesota Statutes § 290.01, subd. 19, provides:

> **Net income.** The term "net income" means the federal taxable income, as defined in section 63 of the Internal Revenue Code of 1986, as amended through the date named in this subdivision, *incorporating ... any elections made by the taxpayer* in accordance with the Internal Revenue Code in determining federal taxable income for federal income tax purposes, and with the modifications provided in subdivisions 19a to 19f.

(Emphasis added.) The plain language of Minnesota's "net income" definition unambiguously "incorporat[es]" federal "elections" made by a taxpayer. Thus, the

elected classification of entities for federal income tax purposes is part of the calculation of net income under Minnesota law. *See Hutchinson Tech., Inc.*, 698 N.W.2d at 8 ("[W]e must give effect to the plain meaning of statutory text when it is clear and unambiguous.").

The third relevant law is Minnesota's water's edge rule, Minn. Stat. § 290.17, subd. 4(f), which, during the tax years at issue, excluded foreign entities from the combined report of a unitary business:

> The net income and apportionment factors under section 290.191 or 290.20 of foreign corporations and other *foreign entities which are part of a unitary business shall not be included in the net income or the apportionment factors of the unitary business.*

(Emphasis added.) *See Hutchinson Tech., Inc.*, 698 N.W.2d at 4 (explaining "the 'waters edge' model of combined reporting, which includes only domestic members of the unitary group in the combined income reporting and excludes foreign members").

The Commissioner contends that the interplay of these federal and state laws requires the exclusion of Hercules SARL from Ashland's combined report for two reasons. First, she asserts that Hercules SARL's federal election to disregard its status as an entity separate from Hercules (and therefore the Ashland-Hercules unitary business) controls Ashland's federal, but not its Minnesota, tax reporting obligations. Specifically, the Commissioner argues that the result of Hercules SARL's federal election—to be disregarded as an entity separate from Hercules—cannot be recognized under Minnesota law without ignoring the plain language of the water's edge rule, which prohibits including the income and losses of a foreign entity on Ashland's combined report. Second, the Commissioner asserts that notwithstanding the federal election, Hercules SARL

retains its foreign nationality. Thus, even if its status is disregarded, the Commissioner argues that Hercules SARL's foreign nationality requires its income and losses to be excluded under the water's edge rule. We consider each argument in turn.

I.

■ The Commissioner first argues that even if federal elections are recognized as the starting point for calculating "net income" under Minnesota tax law, the federal *consequences* of those elections—in this case, the disregarded status of Hercules SARL—are not necessarily given force under Minnesota law. To do so in this case, she contends, results in "cast[ing] aside the water's edge rule entirely." The proper reconciliation of these statutes, she claims, is to recognize that Hercules SARL is not disregarded as an entity separate from Hercules under Minnesota law, and therefore remains a foreign entity that must be excluded from Ashland's combined report.

We begin with the plain language of Minnesota's "net income" definition. "The term 'net income' means the federal taxable income ... incorporating ... *any* elections made by the taxpayer in accordance with the Internal Revenue Code in determining federal taxable income for federal income tax purposes." Minn. Stat. § 290.01, subd. 19 (emphasis added). The language of this statute is broad. We have previously held that the word "any" is "given broad application." *Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 826 (Minn. 2005); *see In re PERA Police & Fire Plan Line of Duty Disability Benefits of Brittain*, 724 N.W.2d 512, 519 (Minn. 2006) ("[W]hen used in the affirmative, the word 'any' means 'every' or 'all.'" (citation omitted)). Further, nothing in this broad language refers to, let alone excludes, the *consequences* of the incorporated federal elections. *See* Minn. Stat. § 290.01, subd.

19; *Hutchinson Tech., Inc.*, 698 N.W.2d at 8 ("[W]e will not add requirements to the statute beyond those specified by the legislature."). The statute's broad reference to "any election" is sufficient to conclude that the election Hercules SARL made under Treas. Reg. § 301.7701-3 (2012), including its consequences, is properly incorporated in the net income reported on Ashland's combined report.

This result, the Commissioner argues, conflicts with the plain language of Minn. Stat. § 290.17, subd. 4(f), which excludes the net income and apportionment factors of a foreign entity from the unitary business's combined report. The only way to reconcile the incorporated elections of Minn. Stat. § 290.01, subd. 19, with the foreign-entity exclusion mandated by Minn. Stat. § 290.17, subd. 4(f), according to the Commissioner, is to ignore the consequences of Hercules SARL's federal election to the extent those consequences conflict with Minnesota law. This is, the Commissioner notes, consistent with the Department of Revenue's longstanding position reflected in Revenue Notice 98-08.

The tax court concluded that recognizing the consequences of Hercules SARL's election "harmonizes" the legislative directives in both statutes because the income and apportionment factors of Hercules SARL become the income and apportionment factors of its domestic parent, Hercules. *Ashland Inc.*, 2016 WL 6635813, at *4. This conclusion flows from Treas. Reg. § 301.7701-3(g)(1)(iii), which explains that once an eligible entity elects to be disregarded, the entity is "deemed" to distribute "all of its assets and liabilities to its single owner in liquidation of the association." *Id.*; *see Ashland Inc.*, 2016 WL 6635813, at *4.

We agree with the tax court. There is only one conclusion to be drawn from the treasury regulation: Hercules SARL's "assets and liabilities" were deemed distributed to Hercules, a domestic entity. Thus, by recognizing this election as directed by Minn. Stat. § 290.01, subd. 19, and recognizing that the "distribution" resulted in the assets and liabilities being held by a domestic entity—Hercules—there is no conflict with the foreign-entity exclusion in Minn. Stat. § 290.17, subd. 4(f).

■ We understand that our holding contradicts the Commissioner's Revenue Notice 98-08, which announced that the Department of Revenue would not "recognize the 'check the box' election made by" an eligible entity with a single owner, such as Hercules SARL, because Minn. Stat. § 290.17, subd. 4(f), "does not permit the net income or the apportionment factors of foreign corporations or foreign entities to be included in a combined report even though they may be part of a unitary business." But "[r]evenue notices do not have the force and effect of law and have no precedential effect," Minn. Stat. § 270C.07, subd. 2 (2016), and "[a]dministrative interpretations do not control our interpretation of a statute when the language of the statute is clear," *Hutchinson Tech., Inc.*, 698 N.W.2d at 14. Relying on this Revenue Notice would render superfluous the directive in Minn. Stat. § 290.01, subd. 19, to recognize "any elections" made by a taxpayer. This we cannot do. *See* Minn. Stat. § 645.17(2) (2016) (stating that "the legislature intends the entire statute to be effective and certain").

We conclude that the tax court did not err in determining that the directive in Minn. Stat. § 290.01, subd. 19 to "incorporat[e]" "any" federal elections requires Minnesota to recognize Hercules SARL's election to disregard its status as separate from its domestic owner, Hercules, in the combined report filed by Ashland.

## II.

▮ The Commissioner next argues that even if Minnesota tax law recognizes the election by Hercules SARL to be disregarded as an entity separate from its owner, Hercules SARL still retains its foreign nationality and cannot be included on Ashland's combined report under the water's edge rule, Minn. Stat. § 290.17, subd. 4(f). The Commissioner relies on our decision in *Manpower*, which, she contends, demonstrates that we must consider entity *status* to be wholly separate from entity *nationality*. Because the foreign nationality of Hercules SARL remains unchanged notwithstanding its election to disregard its status as a separate entity, the Commissioner argues that *Manpower* dictates that the income and apportionment factors of Hercules SARL must be excluded from Ashland's combined report under the water's edge rule. We disagree.

In *Manpower*, the domestic taxpayer's wholly owned foreign subsidiary, Manpower-France (MPF)—also a SARL—was initially treated as a corporation under federal tax law. 724 N.W.2d at 527. MPF later elected federal "partnership" status under Treas. Reg. §§ 301.7701-2, -3 (as amended in 1999). *Manpower*, 724 N.W.2d at 527. The result of MPF's partnership election was a deemed distribution of assets and liabilities to its domestic shareholder, Manpower, which in turn was deemed to have contributed those assets and liabilities to a newly formed partnership. *Id.* at 527-28. And as a deemed partner in the new partnership, Manpower was required to include its distributive share of MPF's income or losses on its federal income tax return. *Id.* In Minnesota, Manpower excluded its distributive share of MPF's net income because, notwithstanding its federal status election, MPF remained a foreign entity. *Id.* at 528.

The Commissioner, in *Manpower*, argued that the effect of MPF's election was to transform the foreign entity into a partnership that was, in effect, "created" under federal law and, therefore, a domestic entity whose income and liabilities must be included on the combined report. *Id.* at 530. We disagreed. *Id.* at 530-32. We first concluded that the change in MPF's classification under Treas. Reg. § 301.7701-3 did not change its nationality as a foreign entity. *Id.* at 530. We reasoned that federal law did not "create[]" partnerships, but merely "deemed" MPF as a partnership solely for the purpose of determining its tax liability. *Id.* ("[A]lthough MPF is 'deemed' to be a partnership under federal tax laws, a partnership cannot actually be created or organized under federal income tax laws."). Next, we stated that the language of the Treas. Reg. § 301.7701-3 "refers only to the classification of the entity, not to its nationality." *Id.* at 530-31. Finally, we relied on the continuing physical and legal existence of MPF, a SARL, in France to conclude that MPF was a foreign, not a domestic, entity. *Id.* at 531. On this last point, we specifically noted that "to change its nationality, a SARL must transfer its principal office out of France." *Id.* Based on these three rationales, we held that MPF "remained a foreign entity and Manpower was required to exclude its distributive share of MPF's net income and apportionment factors" from its Minnesota report. *Id.* at 531-32.

Citing *Manpower*'s first rationale, the Commissioner argues that simply because Hercules SARL made an election to be disregarded as an entity under federal tax law does not mean that it is no longer a foreign entity under Minnesota law. Citing *Manpower*'s second rationale, the Commissioner argues that a federal election alone is not dispositive of an entity's nationality. Finally, citing *Manpower*'s third rationale, the Commissioner contends that because

Hercules SARL still exists as a physical and legal entity in Luxembourg, *Manpower* dictates that Hercules SARL be treated as a foreign entity. In sum, the Commissioner contends that regardless of the domestic status resulting from its federal election, Hercules SARL's actual foreign nationality precludes reporting its income, losses, and deductions on Ashland's combined report under Minn. Stat. § 290.17, subd. 4(f).

Ashland, on the other hand, asserts that giving effect to Hercules SARL's election under Minnesota law does not run afoul the water's edge rule, Minn. Stat. § 290.17, subd. 4(f). Once Minnesota incorporates federal elections through the "net income" definition in Minn. Stat. § 290.01, subd. 19, the provisions governing the effect of that election dictate that Hercules SARL becomes either a mere "division" of a domestic entity, Hercules, *see* Treas. Reg. § 301.7701-2(a) ("[I]f the entity is disregarded, its activities are treated in the same manner as a *sole proprietorship, branch, or division* of the owner." (emphasis added)), or simply a "liquidated asset" of Hercules, *see* Treas. Reg. § 301.7701-3(g)(1)(iii) ("If an eligible entity ... elects ... to be disregarded as an entity separate from its owner, ... [t]he association distributes all of its *assets* and liabilities to its single owner in *liquidation* of the association." (emphasis added)). Thus, Hercules SARL's income and losses are reported only as part of the business activity of Hercules, a domestic entity.

The Commissioner reads *Manpower* too broadly, which is distinguishable on its facts. *Manpower* is distinguishable primarily because, in that case, MPF changed its entity status to a partnership. 724 N.W.2d at 527. A partnership remains an independent entity that *must* have a nationality to determine its federal (and, by incorporation, Minnesota) tax liability. Hercules SARL, however, is not an independent entity. Instead, when it elected to have its status disregarded as a separate entity from Hercules, Hercules SARL, for purposes of federal tax law, ceased to exist on its own and became *part of* its domestic owner, Hercules. Thus, although MPF's foreign nationality was unchanged in *Manpower* as a result of its election, *id.* at 531-32, here, the nationality of Hercules SARL became irrelevant to determining Ashland's Minnesota tax liability, because Hercules SARL was deemed to be a division of Hercules, its domestic owner.

This reading of *Manpower*'s holding is consistent with the plain language of the Treasury Regulations, which explain the effect of an election to disregard entity status. *See* Treas. Reg. §§ 301.7701-2(a), -3(g)(1)(iii). In *Manpower*, we explained that an election did not transform MPF into a domestic entity. 724 N.W.2d at 531-32. *Manpower* did not go so far, however, as to suggest that an entity's foreign nationality can never be impacted. *See id.* at 530-32. Instead, we simply concluded that the federal election cannot transform a foreign entity into a domestic one. Here, consistent with *Manpower*, the election of Hercules SARL also did not render it a domestic entity. Instead, it was deemed to be either a division or a liquidated asset of its parent company, Hercules, a domestic entity. Thus, Hercules SARL's income and liabilities became part of the business activities of its domestic parent company.

We therefore hold that the tax court did not err in concluding that Hercules SARL's losses were properly included on Ashland's combined report as part of Hercules's business activity notwithstanding Hercules SARL's foreign nationality.[5]

---

5. The Commissioner also cites Treas. Reg. § 301.7701-5(a) (as amended in 2006) to sup-

## CONCLUSION

For the foregoing reasons, we affirm the decision of the tax court.

Affirmed.

port her argument that a disregarded entity retains its nationality. For the reasons explained above, the nationality of Hercules SARL, post-deemed liquidation, does not change the fact that its income and liabilities are, as a result of its election, the income and liabilities of its domestic parent, Hercules. In addition, even if this regulation suggests an inconsistency with Minnesota law, not all federal tax laws are binding for purposes of Minnesota tax liability. *See Hutchinson*, 698 N.W.2d at 11 ("While it is true that Minnesota has incorporated federal taxable income as the starting point for calculating Minnesota taxable income, that does not mean that *all* related provisions of federal tax law have been incorporated into state law.").