STATE OF MINNESOTA

IN SUPREME COURT

A23-1561

Tax Court

Uline, Inc.,

Relator,

vs.

Commissioner of Revenue,

Respondent.

McKeig, J.
Took no part, Hennesy, Gaïtas, JJ.

Filed: August 7, 2024
Office of Appellate Courts

———————————————

Aaron D. Van Oort, Tyler A. Young, Michael J. Kaupa, Faegre Drinker Biddle & Reath LLP, Minneapolis, Minnesota, for relator.

Keith Ellison, Attorney General, Jennifer A. Kitchak, Assistant Attorney General, Saint Paul, Minnesota, for respondent.

———————————————

S Y L L A B U S

1.    The mandatory practice of what amounts to market research performed by an out-of-state company's sales team in Minnesota is not considered "solicitation of orders" under Title 15, United States Code section 381, and is therefore not protected from Minnesota state income or franchise taxation.

1

2. The market research performed by the company's sales team in Minnesota was not merely de minimis and therefore is not immune from Minnesota state income or franchise taxation.

Affirmed.

O P I N I O N

McKEIG, Justice.

This tax case requires us to determine whether the activities of a Wisconsin company's sales representatives within Minnesota created a sufficient nexus with the State such that Minnesota may impose an income and franchise tax. Relator Uline, Inc. (Uline) runs its industrial and packaging product business out of Wisconsin but employs a sales team whose members make in-person sales calls to businesses in Minnesota. Uline paid no income or franchise tax to Minnesota for the years 2014 and 2015. Following an audit, the Minnesota Commissioner of Revenue (Commissioner) assessed taxes for those years. Uline appealed, first administratively and then to the tax court, and the assessed taxes were upheld. Uline now appeals to this court, arguing that 15 U.S.C. § 381 provides state income and franchise tax immunity for its activities in Minnesota because either 1) all activities of the sales team were protected "solicitation of orders"; or 2) any unprotected activities created only a de minimis nexus with Minnesota. Because the market research Uline assigned to its sales team in Minnesota went beyond the solicitation of orders, those activities were not protected from state income or franchise taxation. Further, the unprotected activity of Uline's sales team was not de minimis. Therefore, we affirm the decision of the tax court.

2

**FACTS**

Uline is a Wisconsin-based corporation that sells industrial and packaging products. Though Uline's sales business is both web- and catalog-based, Uline also employs sales representatives who regularly call and visit customers in Minnesota. Uline operated a distribution center in Eagan, Minnesota, until September 2013, when Uline moved the center from Eagan to Hudson, Wisconsin. Because of the move, Uline filed a tax return with the State of Minnesota, claiming exemption from Minnesota income tax and franchise tax for the year 2014; Uline did not file a Minnesota tax return for 2015.

During 2014 and 2015—the years at issue—Uline employed approximately 24 sales representatives whose territory included Minnesota customers, and each sales representative was expected to manage up to 7,000 accounts on average. Those representatives were required to record "Sales Notes" for *every* customer visit but also had a company-mandated "goal" of preparing at least two "Market News Notes" per week. The stipulated facts in this case outline the differences between these two types of "Notes."

Sales Notes generally contained a summary of how each customer visit went. This synopsis included the "date and time of a customer visit and summarize[d] pertinent information about the customer's business, its product needs, and other helpful information about key customer contacts."

Market News Notes, on the other hand, documented a much broader array of information, including customers' "special delivery needs, bulk pricing requests, complaints about product or service quality, need for certain products, and what products customers are buying from Uline competitors" as well as information about Uline's

3

competitors themselves, including "detailed product information such as manufacturer and brand . . . product pricing, product lead time, payment terms, annual rebates, and discounts."

Market News Notes were entered into a shared sales database which was accessible by other departments, and any "[c]omments in Market News Notes regarding warehouse issues were directed to the warehouse department at Uline." Further, Uline's training manual explicitly stated that the Market News Notes were shared "to the different departments on a weekly basis" and that getting detailed manufacturer and brand information would "help Marketing direct the note to the correct product manager."

In 2017, the Commissioner investigated Uline's business activities in Minnesota for 2014 and 2015 and determined that Uline was subject to state taxes, despite Uline's claim of exemption.[1] The Commissioner then issued a tax order and audit report in October 2017, which assessed Uline for income and franchise tax for the years 2014 and 2015. Uline appealed the audit report administratively, and the Commissioner denied the appeal.

Uline then appealed the decision to the tax court in 2020. The tax court found that the "regular and systematic preparation of Market News Notes accessible to non-sales personnel went beyond mere solicitation of orders for purposes of [tax] immunity" and

---

[1] This determination was based on four factors, which the Commissioner claimed created a sufficient nexus to be subject to Minnesota tax: 1) Uline's sales representatives' collecting, compiling, and reporting of Market News Notes; 2) Uline's participation in job fairs and recruitment efforts in Minnesota; 3) sales representatives' roles in customer complaints and returns; and 4) a Uline executive's occasional work from his Minnesota residence. The tax court ruled against the Commissioner on issues 2–4 and those determinations were not cross-appealed. Only the Market News Notes are relevant to the issue before this court.

4

accordingly ordered the parties to stipulate to the tax amounts due. *Uline, Inc. v. Comm'r of Revenue*, No. 9435-R, 2023 WL 4189923, at *19 (Minn. T.C. June 23, 2023).

Uline now appeals the tax court's decision.

## ANALYSIS

We review a final order of the tax court to determine if "the order of the Tax Court . . . was not in conformity with law, or that the Tax Court committed any other error of law." Minn. Stat. § 271.10, subd. 1 (2022). The facts here are undisputed, and "[w]here the facts are undisputed, we review the tax court's legal determinations, including the interpretation of statutes, de novo." *Manpower, Inc. v. Comm'r of Revenue*, 724 N.W.2d 526, 528 (Minn. 2006). The Commissioner's tax assessments are presumed valid and correct, and the taxpayer bears the burden of proving otherwise. *Cities Mgmt., Inc. v. Comm'r of Revenue*, 997 N.W.2d 348, 353 (Minn. 2023).

The issue before us is whether certain activities of Uline's sales representatives in Minnesota during 2014 and 2015 subjected the company to Minnesota state income tax and franchise tax. Under the federal Interstate Income Tax Act of 1959, states are not permitted to impose income taxes on any income derived from within the state by an out-of-state business if the only activities conducted by the business within the state are the "solicitation of orders." 15 U.S.C. § 381(a)(1). The relevant language reads:

> No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if

5

the only business activities within such State by or on behalf of such person during such taxable year are . . . the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State . . . .

*Id.* Notably, the term "solicitation of orders" is not defined in the statute. This federal statute is directly incorporated into Minnesota law governing the minimum contacts required for jurisdiction to tax trades or businesses. *See* Minn. Stat. § 290.015, subd. 3(a) (2022) ("A person is not subject to tax under this chapter if the person is engaged in the business of selling tangible personal property and taxation of that person under this chapter is precluded by Public Law 86-272, United States Code, title 15, sections 381 to 384 . . . .").

The United States Supreme Court interpreted the phrase "solicitation of orders" in *Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214 (1992), a case involving a gum manufacturer based in Chicago and its sales representatives' activities in Wisconsin. When discussing the purpose of the law, the Court noted that the law was, in part, " 'designed to define clearly a lower limit' for the exercise of state taxing power. *Id.* at 223 (quoting *Heublein, Inc. v. S.C. Tax Comm'n*, 409 U.S. 275, 280 (1972)). In attempting to define the "somewhat less than entirely clear" standard for the term "solicitation of orders," the Court found that the common understanding of "the term includes not just explicit verbal requests for orders, but also any speech or conduct that implicitly invites an order," including "extol[ling] the virtues of [the] company's product to the retailer of a competitive brand." *Id.* The Court then went on to determine "whether,

6

and to what extent, 'solicitation of orders' covers activities that neither explicitly nor implicitly propose a sale." *Id.*

The Court ultimately drew a line "between those activities that are *entirely ancillary* to requests for purchases—those that serve no independent business function apart from their connection to the soliciting of orders—and those activities that the company would have reason to engage in anyway but chooses to allocate to its in-state sales force." *Id.* at 228–29. The former is part of the "solicitation of orders" and thus not subject to taxation, while the latter can subject the company to taxation by the state.

For example, the sales representatives in *Wrigley* were each supplied with company cars with which to make sales calls in Wisconsin, and a stock of around $1,000 worth of gum, which was stored in Wisconsin and primarily used to replace stale product or perform "agency stock checks."[2] *Id.* at 217–18. The Court reasoned that the company would have had no other reason to supply its sales representatives with company cars outside of facilitating requests for purchase, so that activity was "*entirely ancillary*" to the solicitation of orders, and thus protected from taxation. *Id.* at 228–29. The gum stored in Wisconsin, however, was found to have a business purpose "quite independent from the purpose of soliciting customers" because that gum was used to swap out stale gum, and the company

[2] "Agency stock checks" were a practice by which sales representatives would fill a retail display rack with gum from the stock they kept in their car. *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 218 (1992). Rather than sending the order for goods out of state as required for protection under section 381, the sales representatives would fill the display rack and send a copy of the "agency stock check" to the Chicago office or the wholesaler, which would then bill the retailer. *Wrigley*, 505 U.S. at 218. For exemption from state taxation, 15 U.S.C. § 381(a)(1) requires that goods be delivered from "a point *outside* the State." (Emphasis added.)

7

made the retailers pay for any gum used when setting up display stands. *Id.* at 234. This practice consequently subjected the company to taxation—despite the activity having been performed by sales representatives. *Id.* Accordingly, the Court reasoned that business activities that may help *increase* purchases but are "not ancillary to *requesting purchases* . . . cannot be converted into 'solicitation' by merely being assigned" to sales representatives. *Id.* at 229.

The Court also agreed with the Wisconsin Supreme Court that a company does not necessarily forfeit its tax immunity under section 381 if some in-state activities that go beyond the solicitation of orders are "*de minimis* activities." *Wrigley*, 505 U.S. at 231 (citing *William Wrigley, Jr. Co. v. Wis. Dep't of Revenue*, 465 N.W.2d 800, 811 (Wis. 1991) (internal quotation marks omitted)). The Court held that "whether in-state activity other than 'solicitation of orders' is sufficiently de minimis to avoid loss of the tax immunity conferred by § 381 depends upon whether that activity establishes a nontrivial additional connection with the taxing State." *Id.* at 232. Even though "the relative magnitude of [the company's] activities was not large compared to" its other in-state activities, the Court had "little difficulty" concluding that the activities "constituted a nontrivial additional connection with the State." *Id.* at 235.

Uline argues that the preparation of Market News Notes by its sales team in Minnesota falls within the protected "solicitation of orders" under section 381, or if such activity is not protected, that it was de minimis. We address each argument in turn.

8

# I.

Uline claims that the preparation of Market News Notes was a component of the solicitation process used by its sales team and was therefore part and parcel of the "solicitation of orders" under section 381. This argument is based on the *Wrigley* Court's statement that "the term 'solicitation' " in a general sense "includes not merely the ultimate act of inviting an order *but the entire process associated with the invitation*." *Id.* at 225 (emphasis added). But this misreads *Wrigley*, which expressly rejected Uline's argument, stating:

> We reject this "routinely-associated-with-solicitation" or "customarily-performed-by-salesmen" approach, since it converts a standard embracing only a particular activity ("solicitation") into a standard embracing all activities routinely conducted by those who engage in that particular activity ("salesmen"). If, moreover, the approach were to be applied (as respondent apparently intends) on an industry-by-industry basis, it would render the limitations of § 381(a) toothless, permitting "solicitation of orders" to be whatever a particular industry wants its salesmen to do.

*Id.* at 227. Uline's sales process involved requiring its sales representatives to create Market News Notes, which certainly made those practices part of *Uline's* sales process. But *Wrigley* made clear that simply because a company makes a particular activity part of *its* sales process, that decision does not mean those activities are protected by section 381. After all, gum storage was a duty assigned to Wrigley's sales representatives—and arguably made for more effective sales representatives—but the activity was still found to have had a purpose distinct from solicitation of orders and consequently was unprotected from taxation. *Wrigley*, 505 U.S. at 234.

9

The question remains, however, of whether the preparation and sharing of Market News Notes by Uline's Minnesota sales team went beyond the bounds of the solicitation of orders for taxation purposes under section 381 as interpreted by *Wrigley*. Because the preparation of Market News Notes neither explicitly nor implicitly proposes a sale, we must evaluate the nature of the activity as it relates to requests for purchase. More specifically, we must determine whether the preparation of Market News Notes was "*entirely ancillary* to requests for purchases," or if it was an activity that Uline "would have reason to engage in anyway but [chose] to allocate to its in-state sales force." *Wrigley*, 505 U.S. at 228–29. The Market News Notes that sales representatives were expected to prepare report on information gleaned not only about Uline's customers, but Uline's competitors as well. This information included details about fringe benefits and alternative payment arrangements offered by competitors, the scope of customers' accounts with national competitors, prices that competitors offered on products of which Uline had comparable items, and the collection of samples of competitors' products for comparison and marketing purposes.

Considering the scope of the stated use and purpose of the Market News Notes, it would be difficult to classify them as anything other than market research. Certainly, this information would be *helpful* to sales representatives in their endeavor to solicit orders, as it can inform their tactics related to prices/discounts offered, suggest potential avenues for new product positioning, and pinpoint the likes/dislikes of various customers. But whether an activity is helpful to making a request for purchase is not the test laid out by the *Wrigley* Court. We must ask instead whether Uline would have "good reason" to produce the

Market News Notes "whether or not the company has a sales force." *Id.* at 229.

Uline claims that the preparation of the Market News Notes is, first and foremost, an activity that is purely intended to facilitate requests for purchase as outlined by *Wrigley*. To support this claim, Uline insists that any corollary benefits produced by an activity purely associated with the solicitation of orders cannot transform a protected activity into an unprotected one. And that may be true. But that is not the question we must answer here. The Market News Notes clearly fall outside the protective umbrella of section 381 because, as shown by Uline itself, the company had good reason to prepare the Notes whether it has a sales force or not.

The competitive advantage provided by the information gathered and shared in the Market News Notes is apparent in how the Notes are used. Uline claims that the Notes are merely the result of its efforts to field an efficient sales team, driven to solicit more and more orders by collecting pertinent customer data. Yet that interpretation suggests that the Market News Notes are simply another form of the Sales Notes, and it downplays what the record shows about Uline's use of the Market News Notes. As noted above, Uline's sales representatives *already* record detailed Sales Notes for every customer visit, which include information about customer needs, the products customers currently order, the products customers order from competitors, opportunities for new product placement, and customers' personal lives.

But Uline also requires its sales representatives to record at least two Market News Notes per week, which detail information more relevant to *other* departments in the company than to the sales department. The Market News Notes are organized by topic—

11

Competitor, Operational, and Marketing—to denote the nature of the information, and certain information was actively directed to relevant departments outside the sales department. For example, comments in the Market News Notes regarding warehouse issues were directed to the warehouse department. The Market News Notes were stored in a sales department database, and that database was accessible by several departments other than the sales department. As evidenced by Uline's training manual, the marketing department accessed the Notes, and in some cases, "direct[ed] the note to the correct product manager."

The record shows that the purpose of the Market News Notes clearly went beyond effectuating more effective requests for purchase. Preparing the Market News Notes undoubtedly helps to *increase* sales—as do many activities engaged in by a company in the business of selling products. But "there is good reason" to get the market research done "whether or not the company has a sales force," and the Market News Notes were not entirely ancillary to the "solicitation of orders." *Wrigley*, 505 U.S. at 229. Activities "not ancillary to *requesting purchases* . . . cannot be converted into 'solicitation' by merely being assigned to" sales representatives. *Id.* Therefore, the preparation of Market News Notes by Uline's sales representatives is not exclusively the "solicitation of orders," and is consequently not protected from state taxation by section 381.

II.

Having determined that the preparation of Market News Notes is not siloed exclusively within the "solicitation of orders" under section 381, we must now determine whether the activity was of such a de minimis nature that it would not create the required

nexus for taxation. When creating a de minimis exception for non-solicitation activities, *Wrigley* stated that "whether in-state activity other than 'solicitation of orders' is sufficiently de minimis to avoid loss of the tax immunity conferred by § 381 depends upon whether that activity establishes a nontrivial additional connection with the taxing State." 505 U.S. at 232.

The unprotected activity in *Wrigley* included sales representatives' replacement of stale gum, maintaining an in-state "stock of gum worth several thousand dollars," and gum sales from "agency stock checks," which "accounted for only 0.00007% of [the company's] annual Wisconsin sales." *Id.* at 235. The Court stated: "Although the relative magnitude of these activities was not large compared to Wrigley's other operations in Wisconsin, we have little difficulty concluding that they constituted a nontrivial additional connection with the State." *Id.* Important to the *Wrigley* Court's de minimis analysis was whether an activity is "regular and systematic." *See, e.g.*, *id.* at 220, 221, 233 n.8. In its analysis, the Court found instructive the fact that the company "deliberately chose to use its sales force to engage in regular and systematic replacement of stale product on a level that amounted to several thousand dollars per year, which is a lot of chewing gum."[3] *Id.* at 233 n.8.

---

[3]    Courts in other states accordingly ask whether an activity was "regular and systematic" when performing a de minimis analysis. *See, e.g.*, *Chester A. Asher, Inc. v. Dir., Div. of Taxation*, 22 N.J. Tax 582, 599 (N.J. Tax Ct. 2006) (reasoning that "the fact that there is a company policy, whether written or not" for the unprotected activity made "the activity sufficiently systematic" to find a nontrivial nexus); *Santa Fe Nat. Tobacco Co. v. Dep't of Revenue*, No. TC 5372, 2022 WL 3647621, at *18 (Or. T.C. Aug. 23, 2022) (stating in its de minimis analysis that "the court readily concludes that each of Taxpayer's activities at issue was 'regular and systematic,' as in *Wrigley*").

Uline argues that even if some aspect of the preparation of Market News Notes fell outside the scope of section 381, those activities were ultimately de minimis and did not create the requisite nexus with Minnesota to support taxation. The basis for this argument is that Uline's sales team had many more customers and prepared many more Sales Notes than the total number of Market News Notes prepared. But this argument is unpersuasive.

As noted above, the "relative magnitude" of the unprotected activities is not a compelling reason to find only a trivial connection. *Wrigley*, 505 U.S at 235. The fact that Uline's two dozen sales representatives prepared over 1,600 individual Market News Notes in Minnesota during the 2 years at issue shows that the activity was regular and systematic. If a few thousand dollars' worth of chewing gum is a nontrivial connection with Wisconsin, Uline's 1,600 market research entries on Minnesota businesses are certainly no different. Accordingly, the unprotected preparation of the Market News Notes by Uline's sales team was not a merely de minimis activity and is therefore not immune from Minnesota income and franchise taxation.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the tax court.

Affirmed.

HENNESY, GAÏTAS, JJ., not having been members of this court at the time of submission, took no part in the consideration or decision of this case.

14